244 So.2d 69 (1971)
Charley EDWARDS
v.
STATE of Louisiana, Through the DEPARTMENT OF CORRECTIONS.
No. 8202.
Court of Appeal of Louisiana, First Circuit.
February 1, 1971.
*70 Leon A. Picou, of Picou & D'Aquila, New Roads, for appellant.
John L. Avant, of Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellee.
Before LANDRY, ELLIS, and BLANCHE, JJ.
LANDRY, Judge.
Plaintiff, Charley Edwards, appeals the judgment of the lower court rejecting his claims against the State of Louisiana, through the department of Corrections (Department) for damages for the destruction of plaintiff's sawmill by fire and the loss of certain anticipated profits, allegedly due to defendant's breach of a contract requiring defendant to furnish watchmen for the mill which was being operated for defendant on the grounds of the state penitentiary at Angola, Louisiana.
During trial plaintiff attempted to testify concerning an alleged oral agreement whereby defendant obligated itself to furnish watchmen for the mill notwithstanding a written contract between the parties, dated July 1, 1963, was silent in this respect. Defendant's objection to the testimony on the ground that parol evidence is not admissible to vary the terms of a written agreement, was sustained by the trial court. Plaintiff then called witnesses to establish the value of his mill and its productive capacity. Plaintiff was not recalled to finish his testimony. Plaintiff then announced that he rested his case and requested a continuance that defendant might determine whether defendant wished to offer testimony. Subsequently, at plaintiff's suggestion, briefs were filed by both plaintiff and defendant. Thereafter plaintiff successfully moved the trial court to permit plaintiff's reopening the case to take *71 plaintiff's testimony which had been inadvertently omitted.
Upon the reopening, plaintiff attempted to testify as to an alleged oral agreement, to which evidence defendant objected. Defendant's objection was sustained but plaintiff's testimony on this issue appears of record herein by proffer. After closing his proffer, plaintiff attempted to testify concerning three written contracts allegedly dated June 30, 1964, July 2, 1964, and March 1, 1965, all subsequent to a written contract dated July 1, 1963, which the trial court found controlling herein. The trial court declined to permit plaintiff to testify concerning these later agreements and then concluded he had erred in permitting plaintiff to reopen his case. The trial judge then orally set aside the order reopening the matter. He also concluded the matter had been fully tried and dictated oral reasons for judgment which indicate that he held for defendant upon finding that plaintiff had failed to establish the cause of the fire. We find that the trial court erred, and that this matter must be remanded for further trial.
It is undisputed that plaintiff, a logger who owned his own sawmill, verbally contracted with the Department in 1962, to move his mill to Angola and there operate it to supply lumber for the penitentiary and possibly for sale. Pursuant to the oral agreement, operations were commenced prior to December, 1962, and continued until July 1, 1963. On said date a written contract was perfected between the parties, said contract providing in full as follows:
"1. The Contractor shall manufacture sawed lumber from logs supplied by the Penitentiary.
2. The Contractor shall supervise the entire sawing operation, furnish own sawmill and producing specified boards and timber.
3. The Contractor will obtain the necessary insurance to eliminate liability of Prison Industries Division such as Workmen's Compensation, fidelity bond, etc.
4. The Contractor will be able to obtain necessary repairs for equipment from the Industries Repair Shop.
5. In consideration of these services, the Contractor shall be paid initially the sum of $500.00 per month. This will be immediately subject to renegotiation at such time as production and sales potential develop.
6. All funds will be payable from the Revolving Fund of the Louisiana State Penitentiary.
7. This contract shall be until December 31, 63, with the stipulation that it may be renewed upon agreement of both parties.
This contract shall become effective when approved by the Director.
This contract may be terminated upon one month's written notice by either party, but in any case will not continue beyond December 31, 1963."
It is conceded the mill was completely destroyed by fire on August 30, 1963.
Appellant seeks recovery of $12,823.05, the asserted value of his machinery and equipment, $17,500.00 in alleged lost profit and commissions for the period December, 1962 to July 1, 1963, and $5,000.00 in averred lost profits during the interval July 1, 1963 through August 30, 1963. As a credit against these sums, appellant claims $5,480.65 received by defendant pursuant to a fire insurance policy which the Department took out in its own name and for which payment was made to defendant by the insurer. Appellant maintains the lower court erred in revoking its order reopening the case for further trial. Appellant also contends the trial court erred in dismissing his action on finding either that defendant was not obligated to furnish watchmen under the contract or that defendant's failure in this regard *72 was not shown to be the cause of plaintiff's loss.
Defendant maintains the lower court properly rejected plaintiff's attempt to establish, by parol evidence, obligations which were not contained within the written agreement of July 1, 1963. Alternatively, defendant argues there is no proof of record that the failure to provide watchmen was the cause of the fire and resultant destruction of plaintiff's mill.
In support of its first contention, defendant cites numerous authorities which hold that the terms of a written agreement cannot be varied, added to or altered by parol testimony. Defendant notes that the agreement in question is silent as to its duty to furnish labor and more specifically that it makes no mention whatsoever of the obligation to furnish watchmen for the mill.
It is settled beyond doubt that, as a general rule, parol evidence is inadmissible to vary, modify, contradict or add to the terms of a written agreement. LSA-C.C. art. 2276; Cardos v. Cristadoro, 228 La. 975, 84 So.2d 606. It is equally well established that the foregoing general rule is subject to numerous exceptions. Included in the exceptions is the rule that where the words of a contract are unclear or will lead to an absurdity, parol evidence may be admitted to clear the uncertainty or remove the incongruity. Cardos v. Cristadoro, above.
Another exception to the stated general rule is that where a writing embodying an agreement is manifestly incomplete and not intended by the parties to contain the entire agreement, but only some of its terms, such parts of the actual contract as are not embraced within the document may be established by parol testimony. Otherwise stated, this latter exception holds that parol evidence is admissible to show that written agreement is but part of an entire oral contract between the parties, but parol evidence may not be used to vary, alter or add to the terms of a written contract. Gulf States Finance Corp. v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36; Hyatt v. Hartford Accident and Indemnity Co., La. App., 225 So.2d 102; Dorvin-Huddleston Developments, Inc. v. United Services, Inc., La.App., 207 So.2d 225. We find that the instant case falls within the ambit of the latter exception as will hereinafter appear.
It is significant that the parties conducted the sawmill operation pursuant to an oral agreement from an undetermined date prior to December, 1962, until July 1, 1963.
Plaintiff's proffered testimony is to the effect that in early December, 1962, he moved his sawmill to the penitentiary pursuant to an oral agreement. According to appellant, it was agreed that appellant would have complete supervision of the operation. He also stated that it was agreed that all employees required for the operation would be furnished by defendant from inmate labor.
H. L. Hanchey, Farm Manager at the penitentiary, stated in essence that he was formerly engaged in the sawmill and logging industry for many years and that he assisted in the moving of plaintiff's mill to the penitentiary. He supervised the cutting of the timber which was processed at the mill in question. Hanchey noted that a small fire occurred at the mill approximately thirty or forty days after operation commenced. After the fire, Hanchey discussed with plaintiff the feasibility of procuring watchmen to guard against the possibility of further fires. Hanchey himself approached Warden Walker and requested assignment of guards for night duty at the mill. Guards were then provided for a period of two or three weeks and then withdrawn presumably upon Walker's orders. Hanchey then discussed the matter with plaintiff who related to Hanchey that plaintiff would contact Walker in an effort to restore the watchmen. Thereafter appellant contacted Hanchey and advised Hanchey that he, appellant, was reasonably sure no more guards would be furnished by Walker. Hanchey expressed the opinion that Walker declined to provide additional guard service because Walker did *73 not fully support the sawmill project. Hanchey also observed that the mill was operated entirely by convict labor and that it was customary in the industry to engage night watchmen to guard against the possibility of fires.
It is evident that the mill could not be properly operated without a sufficient labor supply. Under the circumstances, it appears highly questionable that the $500.00 monthly payment provided for was intended to cover all labor costs, as well as the value of plaintiff's supervisory activities and some return to plaintiff for the use of his equipment. It appears equally unlikely that plaintiff would move his mill onto the penitentiary premises without an understanding as to the source of labor supply required in the operation. The problems involved in the daily importation of outside labor for the project are readily cognizable.
The receipt of parol testimony to show these important factors was permissible because the written agreement was incomplete and was not intended by the parties to exhibit the entire agreement. Under the circumstances, such testimony does not alter, add to or vary the terms of the written contract. We hold therefore that the trial court erred in ruling parol evidence inadmissible in this instance. It further appears the ruling of the trial court in this regard substantially hampered plaintiff in the presentation of plaintiff's case and was a prime factor in causing plaintiff to inadvertently submit his case before plaintiff's presentation was complete. We find that the ends of justice will be served by exercising our supervisory jurisdiction and remanding this matter to the trial court thus affording both litigants opportunity for full disclosure of the agreement in question.
We are of the further view that, under the circumstances of this case, the trial court erred in reversing its decision to reopen this matter for further proceedings.
Unquestionably a trial court is vested with discretion in the granting or refusing of a motion to reopen a cause for the taking of additional testimony. However, the modern trend in the trial of lawsuits is to render justice on the merits of a controversy rather than defeat justice on a mere technicality. With this end in view, appellate courts will not hesitate to grant relief when a trial court exercises its discretion in such manner that an injustice is done or substantial rights are lost due to a technicality or ruling of the trial court. Rawls v. Brotherhood of Railroad Trainmen Ins. Dept., 213 La. 89, 35 So.2d 809.
Having reopened the present matter, the trial court erred in summarily reversing its position and denying plaintiff a full opportunity to present his case in its entirety.
We find that the ends of justice will be served by a remand of this matter to the trial court for a full and complete trial of all issues involved, consistent with the views herein expressed.
The judgment of the trial court in favor of defendant, State of Louisiana, through the Department of Corrections, rejecting and dismissing plaintiff's demands, is reversed and this matter remanded to the trial court; such costs as defendant may be liable for shall be paid by defendant.
Reversed and remanded.