United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 1, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No.  04-30765

TOMMY H. CONDREY; MODTRACK CORP.,

Plaintiffs-Appellants,

versus

SUNTRUST BANK OF GEORGIA; ET AL,

Defendants,

SUNTRUST BANK OF GEORGIA,

Defendant-
Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before KING, Chief Judge, BARKSDALE, and STEWART Circuit Judges.

CARL E. STEWART, Circuit Judge:

Tommy H. Condrey ("Condrey") appeals from the district court's grant of summary judgment for SunTrust Bank of Georgia ("SunTrust") in an action brought by Condrey against SunTrust for breach of contract, conversion, fraud, alter ego and conspiracy regarding certain drawings and blueprints of Condrey's agricultural invention.  For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tommy H. Condrey developed a cotton handling feeder system in the late 1980s; he called this system Modtrack. After receiving his first patent for Modtrack, Condrey entered into a licensing agreement with Harrell Equipment Company, Inc. ("Harrell Equipment"). It is the substance of this licensing agreement that is at issue. The events giving rise to Condrey's claims are as follows:

The Condrey/Harrell Equipment licensing agreement, which states with specificity that Louisiana law governs its terms, gave Harrell Equipment the exclusive and nontransferable right to implement, manufacture and market Modtrack. In return, Harrell Equipment paid Condrey a one-time fee of $20,000, with a promise to pay a five-percent royalty on net sales. Condrey retained exclusive ownership of Modtrack in the patents obtained for the invention and agreed to provide Harrell Equipment all documentation, including the patents and drawings relating to Modtrack, with the understanding that Harrell Equipment would keep these documents confidential.

Throughout the 1990s, the relationship between Condrey and Harrell Equipment flourished. Harrell Equipment, with Condrey's supervision, launched the Modtrack System, which was thereafter purchased by various cotton processors. Condrey also joined Harrell Equipment as an independent contractor to market Modtrack and other Harrell Equipment products.

In 1997, however, Harrell Equipment began to personally realize the slump in the agriculture industry. Pursuant to a 1989 first-in-priority security interest granted to SunTrust Bank, SunTrust told Harrell Equipment that it would need to lower its expenses, reduce its outstanding debt and sell more of its inventory to receive additional financing. Over the following year, Harrell Equipment

2

reduced its outstanding debt by $1 million; SunTrust, nonetheless, still refused to provide additional financing. Therefore, Hugh Harrell, who owned a seventy-percent interest in Harrell Equipment, concluded that filing for Chapter 11 was the company's only hope. Harrell discussed his intentions with Will Sims ("Sims"), the president of the local SunTrust branch, and Sims allegedly offered an alternative to bankruptcy. According to Condrey and Harrell Equipment, Sims proposed that if Harrell Equipment allowed SunTrust to execute its lien by filing a writ of possession over Harrell Equipment's movable assets, SunTrust would agree to fund Harrell Equipment's operations. Additionally, if Harrell Equipment reduced its outstanding debt to below $1 million by the end of the year, SunTrust promised that it would sell the company's assets to a third party of Harrell Equipment's choice. Harrell accepted this offer as a favorable alternative to bankruptcy and in 1999, the Superior Court of Decatur County, Georgia, issued a writ granting SunTrust immediate possession of all movable property subject to its security interest. Thereafter, SunTrust purchased all of the immovable property of Harrell Equipment at public auction for the sum of $904,994.22 pursuant to the powers of sale contained within the Deeds to Secure Debt from Harrell to SunTrust. SunTrust also purchased "all general intangibles of Harrell Equipment Company, Inc., whether now existing or hereafter arising" from Harrell Equipment. These intangibles were located in or associated with the manufacturing plant in Vada, Georgia; SunTrust was granted possession of this manufacturing plant via a lease agreement with Harrell Equipment. As a result, SunTrust controlled Harrell Equipment's operations. The characterization of this control, however, is contested, as SunTrust claims that by assuming the responsibilities and manufacturing operations of Harrell Equipment, it was beginning a liquidation process.

Though the structure of Harrell Equipment changed, Condrey claims he was unaware of these changes. He asserts that he was told that it would be business as usual if Harrell Equipment reduced its debt. Therefore, during this period of uncertainty, Condrey continued to sell Harrell Equipment products in Louisiana. He received partial payment on sales commissions via checks drawn on a SunTrust account in the name of "BWL." Condrey later discovered that BWL was an acronym for "Billy Walker Liquidators" and Billy Walker ("Walker") was Harrell Equipment's former CFO, whom SunTrust hired to continue the business' daily operations.

Near the end of 1999, Harrell Equipment had reduced its debt to under $1 million, but Sims and SunTrust did not sell the Harrell Equipment assets to a third party of Harrell Equipment's choice. Instead, on January 19, 2000, SunTrust sold the Harrell Equipment assets, both moveable and immoveable, to LMC Bainbridge, a Georgia company owned seventy-five percent by Lewis Carter and twenty-five percent by Walker. Condrey, however, was unaware of this agreement, until January 3, 2000, when he called Harrell Equipment's offices and was told he had reached the offices of LMC Bainbridge. Condrey immediately sought out Walker and explained that he wanted his "stuff" returned. The two met face-to-face the next day. Condrey claims that at this meeting, Walker suggested that LMC Bainbridge now owned Harrell Equipment's assets and that Walker was an employee of LMC Bainbridge, even though the acquisition actually was not final for another fifteen days and Walker was still technically a SunTrust employee. Nonetheless, Walker reassured Condrey that he would return Condrey's "stuff" once Carter had an opportunity to inventory the purchased assets. Walker also discussed the possibility of LMC Bainbridge entering a licensing agreement with Condrey and, for these reasons, Condrey explains he agreed to wait for his "stuff."

4

By late January, however, Condrey became impatient. His attorney and sister, Lisa Condrey, drafted a letter to Walker demanding he return Condrey's "patents, documents, and software related to the Modtrack System which is apparently still housed in your facility." When LMC Bainbridge responded unfavorably to this request, Condrey filed suit to recover his "stuff." To understand the substance of his claim, we return to the initial Condrey/Harrell Equipment agreement.

For purposes of the Modtrack business collaboration, as the parties acknowledge, Condrey lacked the expertise to fully develop his invention for the market and the documents he drafted did not provide a sufficient basis for a marketable product. As a result, Harrell Equipment's engineers created additional documents and drawings to make Condrey's vision a commercial reality. That said, the parties' original agreement stated that if the relationship between Condrey and Harrell Equipment were ever terminated, "all Licenses granted thereunder immediately revert to Modtrack." The parties agree that this provision means that the original materials would revert to Condrey. The fate of these additional drawings and documents, however, is arguably encompassed in Condrey's reference to his "stuff" and is, therefore, the topic of the appeal before us.

Furthermore, this complex contract dispute has two additional twists. First, Condrey and a representative of Harrell Equipment have testified in affidavits and depositions that it was always their intention that all documentation created in the process of marketing and developing Modtrack would revert to Condrey. Second, the contract's integration clause does not support this assertion. It states, "This agreement sets forth the entire agreement and understanding between the parties as to the subject matter of this agreement and acknowledges all prior discussions between them." Thus, according to the face of the contract, the agreement is wholly integrated within its four corners.

5

Hanging his hat on the implicit rather than explicit understanding of the licensing agreement, Condrey filed suit against SunTrust, LMC Bainbridge and Harrell Equipment in the United States District Court for the Western District of Louisiana to recover his property from the companies. Condrey claimed that SunTrust (1) failed to pay him the proper sales commissions in its role as agent or successor to Harrell Equipment; (2) committed conversion when it oversaw the transfer of Condrey's property to LMC Bainbridge; (3) interfered with Condrey's contractual rights when it prohibited Harrell Equipment from paying appropriate royalties to Condrey; and (4) committed fraud by selling his property under false pretenses. Condrey sought damages and an order compelling the defendants to turn over to him the disputed property.

On April 30, 2002, SunTrust filed a motion for summary judgment and this motion was later referred to United States Magistrate Judge Karen L. Hayes. She determined that the assertion in depositions and affidavits that the parties always contemplated the drawings would revert to Condrey was inadmissible parol evidence. Finding that Louisiana law only allows for the admission of parol evidence under limited circumstances and determining this case did not fall within the realm of available circumstances, the magistrate judge refused to consider the impermissible testimony. Therefore, she concluded that Condrey had no ownership interest in the disputed blueprints and documents. Further, because Georgia law states that possession of property creates a rebuttable presumption of ownership and because Condrey did not rebut this presumption, the magistrate judge found that Condrey's fraud and conversion claims were without merit. Therefore, she recommended that summary judgment be granted in favor SunTrust.

The magistrate judge's report also analyzed the case assuming Condrey did have some ownership interest in the disputed materials. She came to the same result: that the conversion claim

6

must fail because Condrey did not raise a genuine issue as to whether he demanded the return of his property, which is required by Georgia law. Regarding the fraud claims, the magistrate judge found that they were misplaced because SunTrust had no affirmative duty to disclose anything to Condrey and the concealed facts were discoverable through ordinary care, because the SunTrust/Harrell Equipment transactions were a matter of public record. The magistrate judge also determined that Condrey's breach of contract claim must fail because there was no contract between Condrey and SunTrust. On March 25, 2003, the United States District Court, Judge Robert G. James, adopted the magistrate judge's recommendation and granted SunTrust's motion. Condrey now appeals the district court's judgment.

## II. DISCUSSION

A. Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 190 (5th Cir. 2001). "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *DirectTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005). The initial burden to demonstrate that no genuine issue of material fact exists in on the movant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Upon showing there is an absence of evidence to support an essential element of the non-movant's case, the burden shifts to the party opponent to establish that there is a genuine issue of material fact. *Id*. at 22.

B. The Breach of Contract Claim: Original Designs Created by Condrey

7

Magistrate Judge Hayes' report stated that because the licensing agreement was not ambiguous and because it contained an integration clause, parol evidence was not admissible to negate or vary the terms of the written contract. On appeal, Condrey asserts that, "[w]hen a contract is silent as to a material provision, parol evidence is admissible to supply the missing provision." Condrey further explains that because the licensing agreements were silent as to the ownership of the blueprints, we should consider Condrey and Harrell's testimony that the parties intended Condrey to own all data related to his patent. He argues that, contrary to the district court's holding, this testimony does not negate or vary the terms of the written contract; instead it only supplements the contract and presents an additional, non-contradictory facet to the agreement. Condrey also argues that the Louisiana Civil Code permits consideration of parol evidence where the interests of justice demand such consideration. His argument, however, contravenes basic understanding of Louisiana law.

Louisiana law bars parol evidence to evaluate contractual intent "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences." La. Civ. Code Ann. art. 2046 (1987). Louisiana law does allow, however, for the admissibility of parol evidence when the written agreement is manifestly incomplete and is not intended to constitute the entire agreement between the parties. *United Investors Life Ins. Co. v. Alexander*, 27-466, p. 2-3 (La. App. 2 Cir. 11/1/95); 662 So. 2d 831, 833; *Edwards v. State of Louisiana Through the Dep't of Corrections*, 244 So. 2d 69, 72 (La. App. Ct. 1971). Additionally, La. Civ. Code Ann. Art. § 1848 states:

> Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or

8

to prove that the written act was modified by a subsequent valid oral agreement.

La. Civ. Code Ann. Art. § 1848 (1987). Thus, when the terms of a written agreement are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or to show the intention of the parties. *Martin Exploration Co. v. Amoco Prod. Co.*, 93-0349, p. 5-6 (La. App. 1st Cir. 6/27/94); 637 So. 2d 1202, 1205 *writ denied*, 644 So. 2d 1048 (La. 1994). Parol evidence may not be used, however, to vary, alter or add to the terms of a written contract. *Edwards*, 244 So. 2d at 72.

Condrey makes the additional argument that his evidence qualifies under the exception for modifications by subsequent oral agreements under which courts will consider parol evidence. We conclude that Condrey's reasoning is faulty. Condrey is attempting to prove the existence of a contemporaneous oral agreement, and according to Louisiana law, such agreements do not fit within the parol evidence exception. *First Nat'l Bank of Jefferson Parish v. Campo*, 537 So. 2d 268, 270-71 (La. Ct. App. 1988) ("contemporaneous oral agreement or understanding between the parties that is not made part of the written contract does not qualify as such an exception [to the parol evidence rule]."); *Badalamenti v. Jefferson Guar. Bank*, 99-1371, p. 11 (La. App. 5 Cir. 4/25/00); 759 So. 2d 274, 280-281. A review of the affidavits of Condrey and Harrell shows that they are not claiming the two licensing agreements were modified by a subsequent agreement; as the magistrate judge's report and recommendation pointed out, they claim that it was "always understood" that Condrey and Modtrack would own the engineering drawings, specifications, bills of material, computer software and related materials undisputedly created by Harrell. At least, this evidence

9

supports a contemporaneous and not a subsequent agreement. Therefore, we are not persuaded to look beyond the four corners of the licensing agreement.

Condrey's next argument on this issue is that "he is not trying to negate or vary the terms of the licensing agreement; he is trying to show the intent of the parties concerning the ownership of data, the creation of which was an essential part of the contract." Condrey contends that he merely wishes to supply a missing element in the contract. Condrey is correct that Louisiana law allows parol evidence to complete an incomplete contract. *See Davis v. Stern*, 348 So. 2d 726, 727 (La. Ct. App. 1977 ("Where the contract itself is incomplete or silent in respect to the obligations assumed by one of the parties, parol evidence may be admitted to show the complete agreement."). On the other hand, as the district court recognized, "not all obligations arising out of a contract need be explicitly stated." *McKee v. Southfield Sch.*, 613 So. 2d 659, 661 (La. Ct. App. 1993). Therefore, for this "missing material provision" exception to apply, the contract must be incomplete. This is not the case in the Condrey/Harrell Equipment licensing agreement; it contains an integration clause that states the written agreement acknowledges all prior discussions between the parties. Louisiana law is consistent in its interpretation of contracts vis a vis an integration or merger clause. Parol evidence is admissible "to show that the written agreement was incomplete and was not intended by the parties to exhibit the entire agreement." *Guilbeau v. C&D Reprographics-Lafayette*, *Inc*., 568 So. 2d 206, 211 (La. Ct. App. 1990). By its very definition, an integration or merger clause negates the legal introduction of parol evidence; it is a "provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document." *Blacks Law Dictionary* 683 (6th ed. 1983). For example, in *Omnitech International Inc v. Clorox Co.*, 11 F.3d 1316 (5th Cir. 1994), where Omnitech, a roach spray

10

manufacturer, brought suit against The Clorox Company in Louisiana for breach of contract, we analyzed the contract's integration clause and opined:

> The written agreements between the parties include an express integration clause, reflecting that the entire agreement between the parties had been reduced to writing . . . While we by no means interpret the merger clause, per se, to preclude any parol evidence as to other possible agreements and/or representations between the parties, the facts of the instant case compel a conclusion that the merger clause correctly reflected the parties' intentions and should thus be enforced as written.

11 F.3d at 1328. Thus, because the crux of the inquiry is whether a contract properly reflects the parties' intentions, we must evaluate the substance of the licensing agreement.

The licensing agreement at issue is six pages long and contains eighteen subparts. The subparts discuss a wide variety of topics including: the fate of the Modtrack patents, consideration paid by both parties, a best efforts requirement, manufacturing and design standards, confidentiality, financial obligations, trademark issues, responsibilities of the contracting parties, termination of the agreement, rights of first refusal, patent infringement, and waiver of rights. The scope of the licensing agreement is conspicuously broad in that the document exhausts a spectrum of issues surrounding the parties' contractual relationship. Harrell Equipment and Condrey labored to create a document that would elucidate their intentions, as well as plan for the future of their business endeavor. Furthermore, subpart seventeen "seals the deal" by providing, "This agreement sets forth the entire agreement and understanding between the parties as to the subject matter of this agreement and acknowledges all prior discussions between them." This is a fully integrated contract. Therefore, because Louisiana contract law explains that integration clauses must be given effect where the contract properly reflects the parties' intentions, parol evidence must be excluded from this court's

11

review in this case. *See Henning Constr. v. First E. Bank & Trust Co.*, 92-0435 (La. App. 4 Cir. 3/15/94); 635 So. 2d 273, 275.

Condrey, however, relies on *Southern Hardware Co., Ltd. v. Honeywell Information Systems, Inc.,* 373 So. 2d 738 (La. Ct. App. 1979), as authority for the proposition that integration clauses are not dispositive on the issue of disallowing parol evidence. In that case, the plaintiff sued the defendant for its failure to deliver a computer system. *Id*. at 739. The sales contract did not provide for a delivery date. *Id.* The court nevertheless admitted parol evidence regarding the agreed-upon date of delivery and reasoned:

> While it is true that parol evidence is not admissible to prove a collateral agreement which is inconsistent with the written contract, it is admissible to supply a patent deficiency in the contract. This rule is particularly applicable to situations where the contract is silent regarding an essential term or a term the parties would necessarily have considered.

*Id.* at 740.

The court in *Honeywell* admitted the parol evidence as a means of giving effect to the contract. But in that case, the date of delivery was unequivocally an essential term that had been omitted; the contract centered around the purchase and delivery of computer systems. In the case before us, the relative necessity of a term explaining the ownership of the documents and blueprints is not as clear-cut. Furthermore, the licensing agreement does contain provisions addressing property interests other than the blueprints and drawings. For example, the licensing agreement details Harrell Equipment's one-time payment to Condrey and explains the royalties to be paid to Condrey. "Royalty" is defined as the "landowner's share of production, free of expenses of production." *Ramming v. Natural Gas Pipeline Co. of Am.*, 390 F.3d 366, 372 (5th Cir. 2004).

12

Thus, the licensing agreement discusses the consideration paid by and to the parties, including ownership interests in the share of production. It also notes that the patents are and will remain the property of Condrey. Further, the licensing agreement contemplates several "potential" situations, including the dissolution of the licensing agreement.

These are just a few of the many points noted by the district court as evidence that the licensing agreement is a fully integrated document that embodies the intentions of the parties. Therefore, because the drafters of the document included an exhaustive list of current concerns and future safeguards in the licensing agreement, we conclude that it is safe to say that a provision determining the ownership of the drawings and blueprints, unlike the provision in *Honeywell*, was not and is not a necessary term inadvertently omitted from the contract.

Continuing with his parol evidence argument, Condrey also asserts that his testimony should be admitted based on the equitable remedy of detrimental reliance. The elements of a cause of action for detrimental reliance are (i) a promise made (ii) by one who knows or has reason to know (iii) that the promise will induce the other party to rely, (iv) to his detriment, (v) provided the reliance is reasonable. La. Civ. Code Ann. art. 1967 (1987). The court in *Omnitech International* analyzed the potential admission of parol evidence based on the detrimental reliance exception, stating, "We . . . note that such promises, if made, were outside the scope of the fully-integrated, written agreements between Omnitech and Clorox . . . we refuse to look past the written terms of the agreements." *Omnitech Int'l,* 11 F.3d at 1330. Applying the holding in *Omnitech International*, having determined that parol evidence is inadmissible, we also determine that the doctrine of detrimental reliance does not apply.

Therefore, we conclude that Louisiana law bars parol evidence in this case, where the contract is unambiguous and where a merger clause confirms the intent of the parties that the contract be a fully integrated document. Likewise, we conclude that the doctrine of detrimental reliance does not apply. Further, Condrey's "interest of justice" argument under La. Civ. Code Ann. art. 1848 (1987) also fails. Even though, as Condrey contends, he may be an "innocent third party," because this testimony is inadmissible parol evidence, it is immaterial that both Condrey and Harrell's statements regarding their understanding of the ownership of the Modtrack documents point to Condrey as the rightful owner. Thus, we agree with the district court's conclusion that because the language of the licensing agreement at issue is not misleading, unclear or vague, parol evidence is barred and Condrey has not presented independent evidence that there is a genuine issue of material fact regarding this issue. Neither the September 25, 1992, licensing agreement nor the amended licensing agreement dated May 12, 1995,[1] contain any reference to the ownership of the property in question; both, however, reference other ownership interests and contain an identical all-encompassing merger clause, designating the licensing agreement as an integrated contract.

C. The Breach of Contract Claim: Post-Contractual Designs Created by Harrell Equipment

Regarding the Modtrack designs created after Condrey and Harrell Equipment entered into the licensing agreement, Condrey claims that the district court overlooked evidence that established a genuine issue regarding whether he overcame the presumption of ownership in favor of SunTrust and Harrell Equipment. The contract specifically looked to Louisiana law as its governing body but the magistrate judge determined that the subsequent drawings, which are not the subject of any

---

[1]Both the 1992 and 1995 licensing agreements are identical for purposes of this appeal; both agreements include a provision that the instant agreement "sets forth the entire agreement and understanding between the parties as the subject matter of this argument."

14

contract, are governed by Georgia law, since the transactions or occurrences took place in Georgia. Specifically, the magistrate judge stated, "In the absence of a Louisiana contractual provision governing the ownership of the disputed property, the issue of ownership of the property in question must be determined under Georgia law." The parties disagree as to which law applies. Nonetheless, this choice-of-law issue need not be decided because under either state's law, possession of a thing creates a rebuttable presumption of ownership. *Hattaway v. Keefe*, 381 S.E.2d 569, 572 (Ga. Ct. App. 1989) ("One in possession of personal property is presumed to be the owner until the contrary appears, and the burden of rebutting the presumption is upon the party claiming adversely to the one in possession."); La. Civ. Code Ann. art. 530 (1987) ("The possessor of a corporeal movable is presumed to be its owner."). Thus the question is not which law applies, but whether Condrey presented evidence sufficient to raise a genuine issue as to whether he rebutted the presumption of ownership, as " the burden of rebutting the presumption is upon the party claiming adversely to the one in possession." *Hattaway*, 381 S.E.2d at 572. We conclude that Condrey has not met this burden.

Condrey's main argument is that he and Harrell Equipment agreed, as part of consideration for the contract, that the subsequent drawings would belong to Condrey. Condrey also contends that the data were their intellectual property and were created pursuant to a "joint effort" between Condrey and Harrell's employees. Unlike the argument regarding the initial drawings, this assertion evokes a definitive answer. The contract specifically states that the consideration offered by Harrell Equipment is a $20,000 one-time payment and subsequent five-percent royalties. The contract mentions no other consideration. Reading the contract with the integration clause in mind, allowing such an argument to stand would contravene basic principles of contract interpretation by altering the

face of the Condrey/Harrell Equipment agreement. Furthermore, this parol evidence is the only evidence proffered by Condrey regarding his ownership of the drawings and blueprints. Thus, as the district court stated, we agree that "Plaintiffs have failed to establish a genuine issue of material fact to rebut the presumption that Harrell owned the data."

In addition to his consideration argument, Condrey also asserts that the deposition of Hugh Harrell confirms Harrell's affidavit and Condrey's testimony. This testimony, however, is inadmissible parol evidence. In his deposition, Harrell was asked, "So your testimony is . . . that when you and he made your initial agreement, you and he had a meeting of the minds that the engineering drawings that would be developed by Harrell Equipment Company to produce, manufacture, and improve the feeder system would at the conclusion of the contract become the property of Modtrack and Condrey." Harrell replies, "I think that's fair to say." What may not be fair, according to Condrey, is the fact that this evidence, pursuant to the plain language of Harrell's testimony, is barred from our review.

Harrell agrees that the understanding regarding subsequent drawings and blueprints came about when he and Condrey made their licensing agreement. But as we stated above, contemporaneous oral agreements are not among the parol evidence exceptions. Accordingly, Condrey may have an arsenal of evidence sufficient to raise a genuine issue as to the presumption of ownership; unfortunately, we cannot allow such inadmissible parol evidence to illuminate a wholly integrated licensing agreement.

D. The Conversion Claim

Because we have concluded that Condrey cannot and did not present evidence of ownership regarding the documents pursuant to the licensing agreement, and because the Georgia court included

16

the engineering drawings as part of the writ of possession, SunTrust lawfully possessed the Modtrack drawings and blueprints. Furthermore, under Georgia law,[2] there must be a demand by the plaintiff upon the defendant that the converted property be returned and the defendant must refuse that demand. *See Bryant v. Carver State Bank*, 428 S.E. 2d 621 (Ga. Ct. App. 1993). Therefore, we must analyze Condrey's claim of conversion to determine if Condrey demanded SunTrust return his property, as the issue here is not whether SunTrust acquired an ownership interest in the property, but whether Condrey asked for the swift return of his property.

Under Georgia law, conversion is defined as "unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Tidwell v. Tidwell*, 554 S.E. 2d 822, 824 (Ga. Ct. App. 2001) (internal citations omitted). *Bryant,* 428 S.E.2d at 623 ("In order to prevail on their conversion claim, the appellants were required to show that the bank had lawfully gained possession of the loan commitment fees, that the appellants retained title and right of possession of the money, and that the bank refused to return it."). Moreover, Georgia law mandates that a party unequivocally demand his property be returned. *Spooner v. Lossiah*, 366 S.E.2d 236, 238 (Ga. Ct. App. 1988) ("There is no evidence that either plaintiff made an unequivocal demand for delivery of the [disputed property]. We therefore conclude that there is no evidence that defendants' continued possession of the [disputed property] manifested a conversion."); *Int'l Images, Inc. v. Smith*, 318 So. 2d 711, 714 (Ga. Ct. App. 1984) ("we are not

---

[2]As the magistrate judge's report and recommendation stated, Georgia law governs because, "SunTrust had a contract with Harrell Equipment, made and enforced pursuant to Georgia law. The property in question was all located in Georgia. SunTrust's actions all took place in Georgia. There is no basis for applying Louisiana law to SunTrust's actions regarding Harrell Equipment. SunTrust's actions must be judged by Georgia law."

17

convinced that [the plaintiff] made an unequivocal demand for delivery of the stored materials . . . there is nothing in the record [to suggest] that he made an unequivocal statement that the property was his, furnished proof thereof, and demanded delivery to himself at that time . . .").  The record before us reflects that on January 3 and 4, 2000, Condrey orally requested that Walker return his "stuff." It is undisputed that Walker was a former employee of Harrell Equipment and, at the time Condrey demanded his "stuff" from Walker, he was, admittedly unbeknownst to Condrey, an employee of SunTrust. Condrey asserts that because of Walker's status as a former Harrell Equipment employee, he understood the meaning of "stuff." Though this may be true, we do not find that a demand hinging on the word "stuff" is sufficiently specific to constitute an unequivocal demand.

Condrey does, however, mention in his deposition that he requested his drawings and patents be returned. Furthermore, in a fax from Condrey's sister, attorney Lisa Condrey, she refers to unreturned phone calls made prior to the sale of Harrell Equipment to LMC Bainbridge on January 19, 2000, concerning the return of the data. Though Condrey's written demand could be seen as unequivocal, it was received after the company changed hands. Thus, because the only evidence of a demand prior to January 19, 2000, does not surpass Georgia's unequivocal threshold, we conclude that Condrey has not made a sufficient demand.

Even if we did find that Condrey had presented sufficient evidence to assert a good faith demand of his property, our determination on this element of conversion would satisfy only part of his burden. Condrey has not presented evidence of the second element in a claim of conversion when

18

one is in lawful possession; the record does not reflect that SunTrust refused to return the documents and blueprints.[3]

Condrey argues that in response to his request for his "stuff" and, specifically, patents, Walker agreed to return "anything that belongs" to him after a Harrell Equipment officer conducted an inventory. This is the only indicator in the record regarding a response to Condrey's request that his property be returned.

Under Georgia law, in the absence of a timely demand by Condrey on SunTrust, there can be no conversion as a matter of law, and summary judgment is appropriate. *See Jennette v. Nat'l Cmty. Dev. Serv., Inc.*, 520 S.E.2d 231, 235 (Ga. Ct. App. 1999). Furthermore, "when someone comes into lawful possession of personal property, in the absence of a demand for its return and a *refusal to return the personal property*, there is no conversion." *Corbin v. Regions Bank*, 574 S.E.2d 616, 621 (Ga. Ct. App. 2002) (emphasis added) (internal citations omitted). Thus, because we find no evidence of an unequivocal demand by Condrey and no evidence of a denial of the request that SunTrust return Condrey's property, his conversion claim must fail.

E. The Fraud Claim

Condrey also asserts on appeal that SunTrust had a duty to disclose its intentions regarding the former Harrell Equipment assets and because it did not disclose its intentions, SunTrust's actions constituted fraud. Basically, Condrey asks this court to find that a de facto contractual relationship

---

[3] In both oral arguments and in Condrey's brief, Condrey conceded that, "After being sued, LMC Bainbridge finally returned all the data in their possession." This significant fact is not mentioned in any other brief or in the record and, during oral argument, counsel for Condrey claimed for the first time that even though LMC Bainbridge returned the data, Condrey suffered loss of income as a result of the time that elapsed from deprivation of the drawings and blueprints to the date of their return to Condrey.

19

created a duty between Condrey and SunTrust. Further, Condrey asserts that because SunTrust

ignored the fact that the license agreement was nontransferable and because the license agreement

contained confidentiality provisions, when SunTrust turned the drawings and blueprints over to LMC

Bainbridge, SunTrust's silence as to Condrey constituted fraud.

Under Georgia law, to prove a claim for the tort of fraud, the plaintiff must prove five

elements:

> (1) that the defendant made a false representation; (2) that at the time
> he made the representation, he knew that the representation was false;
> (3) that he made the representation with the intention and purpose of
> deceiving the plaintiff; (4) that the plaintiff reasonably relied on such
> representations; and (5) that the plaintiff sustained loss and damages
> as the proximate result of the representations having been made.

*Lognino v. Bank of Ellijay*, 491 S.E.2d 81, 84 (Ga. Ct. App. 1998). Condrey asserts that his fraud

claim arises from a breach of affirmative duty and it centers around SunTrust's failure to inform

Condrey of its relationship with Harrell Equipment. Condrey primarily relies on Georgia Code § 23-

2-53 (2005), which reads, "Suppression of a material fact which a party is under an obligation to

communicate constitutes fraud. The obligation to communicate may arise from the confidential

relations of the parties or from the particular circumstances of the case." Ga. Code. Ann. § 23-2-53

(2005).

First and foremost, we find that SunTrust owed Condrey no affirmative duty, as they are not

in a confidential relationship; Condrey was not even a customer of the bank. "Georgia law is

abundantly clear that '[a]n obligation to disclose must exist before a party may be held liable for fraud

based upon the concealment of material facts. In the absence of a confidential relationship, no duty

to disclose exists when parties are engaged in arm's-length business negotiations.'" *Infrasource, Inc.*

*v. Hahn Yalena Corp.*, 613 S.E.2d 144, 147 (Ga. Ct. App. 2005). Georgia law is also clear as to what constitutes a confidential relationship.

> Any relationship shall be deemed confidential . . . where one party is so situated as to exercise a controlling influence over the will, conduct and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

Ga. Code. Ann. § 23-2-58 (2005). "The mere fact that one reposes trust and confidence in another does not create a confidential relationship. A confidential and fiduciary relationship must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same." *Infrasource, Inc.*, 613 S.E.2d at 147 (citing *Allen v. Hub Cap Heaven*, 484 S.E.2d 259, 264 (Ga. Ct. App. 1997)). Additionally, "Parties negotiating the sale of a business 'are not by virtue of their status as such, placed in a confidential relationship to each other but are presumed to be dealing at arm's length.'" *Infrasource, Inc.*, 613 S.E.2d at 147 (citing *William Goldberg & Co. v. Cohen*, 466 S.E.2d 872, 881 (Ga. Ct. App. 1995)). Thus, under Georgia law, Condrey has not met his burden of proof on this issue.

Condrey merely asserts in his argument before us that Harrell Equipment and SunTrust impliedly entered into a contract with Condrey. We find no evidence to support this theory. Furthermore, we find Condrey's implied contract claim contradicts his previous claim; if the licensing agreement specifically states that it is nontransferable, then we find it inconsistent that Condrey would assert that by assuming Harrell Equipment's obligations, SunTrust assumed the duties owed to Condrey under the licensing agreement. We can not reconcile these two arguments, neither of which supports a finding of fraud.

Condrey's argument then focuses his fraud claim on SunTrust's absence of communication. He claims that SunTrust's nondisclosure of information that it had an obligation to disclose regarding the sale of Harrell Equipment's assets constitutes fraud. This argument is simply without merit because, as we stated earlier, SunTrust had no obligation to Condrey. According to Georgia law, a defendant's failure to inform the plaintiff of a material fact does not constitute fraud where there is no obligation to communicate. Ga. Code Ann. § 23-2-53 (2005) ("Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."); *Park Place Café, Inc. v. Metro Life Ins. Co.*, 563 S.E.2d 463, 465 (Ga. Ct. App. 2002) (quoting Ga. Code. Ann. § 23-2-53 (2005)). Therefore, we do not find Condrey's nonfeasance argument persuasive.

Finally, the magistrate judge determined that Condrey's failure to perform the required due diligence further supports a finding that his fraud claim must fail. According to *Southern Intermodal Logistics, Inc. v. Smith & Kelley Co.*, 379 S.E.2d 612 (Ga. Ct. App. 1989), "While concealment of material facts may amount to fraud when the concealment is of intrinsic qualities the other party could not discover by the exercise of ordinary care . . . in an arms-length business or contractual relationship there is no obligation to disclose information which is equally available to both parties." 379 S.E.2d at 614 (internal citations omitted). In *Southern Intermodal*, Southern Intermodel was hired by Smith & Kelly to perform hauling services for a third company, Prudential Lines, Inc. Prudential failed to pay Southern Intermodal for its services and, therefore, Southern Intermodel sued Smith & Kelley for fraud on the basis of its failure to disclose that Prudential was having financial difficulties. The Georgia Court of Appeals affirmed the grant of summary judgment in favor of Smith & Kelley

22

because Prudential's financial difficulties were known throughout the industry. Southern Intermodal made no effort to access readily available information regarding Prudential's financial status. The court stated that in Georgia, "actionable fraud cannot be shown unless the plaintiff exercised due care to discover the fraud." *Id.* at 614. Therefore, the Georgia court deemed Southern Intermodal's failure to perform due diligence fatal to its fraud claim.

Likewise, Condrey's fraud claim must fail. Magistrate Judge Hayes found and the record reflects that Condrey knew as far back as 1997 that Harrell Equipment was experiencing financial difficulties. In 1999, Condrey even testifed that he was aware that SunTrust was signing off on at least some of Harrell Equipment's business decisions. However, Condrey and the record are silent as to any substantive financial inquiries into the seriousness of the situation. In sum, the record amply supports the district court's rejection of Condrey's fraud claim.

F. The Alter Ego and Conspiracy Claims

Condrey also asserts that once SunTrust assumed the benefits of the licensing agreement, it "stands in [Harrell Equipment's] shoes" and accordingly assumed its obligations, one of which is to maintain the confidentiality of Condrey's intellectual property. SunTrust urges us to ignore this argument, because, as the record reflects, it was not properly presented to the district court and is therefore waived. Even if this were not so, as we stated above, we can dispose of this assertion because it substantively contradicts an earlier claim. If the licensing agreement specifically states and Condrey previously argues that the contract is non-transferable, then we find it inconsistent that Condrey now deduces that by assuming Harrell Equipment's obligations, SunTrust assumed the duties owed to Condrey under the licensing agreement. Therefore, his breach of contract allegations regarding SunTrust must fail.

23

Condrey also asserts on appeal that SunTrust and Harrell Equipment conspired to defraud creditors, including Condrey. He maintains that Harrell Equipment owed a fiduciary duty to him to disclose that which would materially harm his rights. Condrey, however, never raised this issue in the district court. His original complaint made no mention of it and his amended complaint only referred to conspiracy claims between SunTrust and Carter, the president of LMC Bainbridge. Even if we did read the amended report as properly raising this issue, we cannot consider the amended report, as the magistrate judge denied the motion for leave of court to admit the amended report as moot since the district court had already granted SunTrust's motion for summary judgment.[4] Therefore, we do not consider this claim on appeal.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[4]On April 27, 2003, an order mooting a motion to amend Condrey's answer, cross claim and intervenor complaint was signed by United States Magistrate Judge Karen L. Hayes.