# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2020

Lyle W. Cayce
Clerk

No. 20-30186

ROBERT C. AHDERS, INDIVIDUAL DOMICILED IN CALIFORNIA,

*Plaintiff—Appellant*,

*versus*

SEI PRIVATE TRUST COMPANY, PENNSYLVANIA CORPORATION;
SEI INVESTMENTS COMPANY, PENNSYLVANIA CORPORATION;
CONTINENTAL CASUALTY COMPANY, ILLINOIS CORPORATION;
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON,
UNINCORPORATED ASSOCIATION DOMICILED IN THE UNITED
KINGDOM; INDIAN HARBOR INSURANCE COMPANY, DELAWARE
CORPORATION; NUTMEG INSURANCE COMPANY, CONNECTICUT
CORPORATION; ALLIED WORLD ASSURANCE COMPANY (U.S.),
INCORPORATED, DELAWARE CORPORATION; ARCH INSURANCE
GROUP, MISSOURI CORPORATION,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CV-801
USDC No. 3:19-CV-353

Before OWEN, *Chief Judge*, and KING and ENGELHARDT, *Circuit Judges*.

OWEN, *Chief Judge*:

No. 20-30186

Plaintiffs brought this action against SEI Private Trust Company and SEI Investments Company (collectively, SEI), and SEI's insurers, seeking to hold SEI liable under the control-person provision of Louisiana Securities Law. The district court granted summary judgment to SEI and its insurers, concluding that SEI was not a control person under the statute. We affirm.

**I**

This case arises out of R. Allen Stanford's Ponzi scheme.[1] At its heart, Stanford's Ponzi scheme involved selling fraudulent certificates of deposit (CDs) to investors though his company Stanford International Bank, Ltd. (SIBL).[2] The plaintiffs are investors who owned SIBL CDs as part of their individual retirement accounts (IRAs). The IRAs were held by Stanford Trust Company (STC). The investors assert that STC violated Louisiana Securities Law by selling, holding, and misrepresenting the value of the fraudulent SIBL CDs.

In order to perform its operational functions, STC contracted with SEI. SEI provides "asset management, investment processing, and investment operation solutions" for wealth-management companies. Under the contract, SEI was responsible for, among other functions, sending account statements to clients, reporting income and other details to the IRS, and providing a platform and operations for the IRAs. The contract specified that the "legal relationship" of SEI to STC was "intended to be that of an independent contractor."

Investors used SEI's platform to view the value of various assets, including the SIBL CDs. The contract assigned STC the responsibility to

---

[1] *See Janvey v. Brown*, 767 F.3d 430, 433-34 (5th Cir. 2014) (describing the Stanford Ponzi scheme).

[2] *See id.*

No. 20-30186

"obtain prices" for non-marketable securities, expressly including "CDs," and to "provide [the prices] to SEI." The contract further made STC "solely responsible for the accuracy and completeness of any data or other information provided" to SEI under the contract. SEI was responsible for "[s]tatement production and printing," while STC was responsible for "[s]tatement review." The statements sent to investors bore STC's name and did not indicate that SEI was involved in the statement's preparation.

The investors allege that SEI is liable for STC's violations under the control-person provision of Louisiana Securities Law[3] based on SEI's contractual relationship with STC. In the district court, SEI moved for summary judgment, arguing that the investors had not established that SEI had control over the primary violations allegedly committed by STC. The district court held that the investors failed to establish that SEI had direct or indirect control over STC's primary violations, and therefore granted summary judgment to SEI. SEI's insurers then moved for summary judgment, and the district court granted their motion. The investors appeal both grants of summary judgment.

## II

"This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court."[4] Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A genuine dispute of material fact exists "if the evidence is sufficient for a reasonable

---

[3] LA. STAT. ANN. § 51:714(B) (1985).

[4] *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).

[5] FED. R. CIV. P. 56(a).

jury to return a verdict for the nonmoving party."[6]  "In reviewing an appeal from summary judgment, we 'view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"[7]

The investors' sole claim is that SEI is liable for STC's primary violations of Louisiana Securities Law as a control person under Section 51:714(B).  Section 51:714(B) states:

> Every person who directly or indirectly controls a person liable under Subsection A of this Section . . . is liable jointly and severally with and to the same extent as the person liable under Subsection A of this Section unless the person whose liability arises under this Subsection sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which liability is alleged to exist.[8]

Thus, SEI is liable for the alleged primary violations of STC if SEI directly or indirectly controlled STC.  Control is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[9]

Because Louisiana precedent interpreting Section 51:714(B) is "thin," "we look to federal law for instruction."[10]  "Control person liability

---

[6] *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (quoting *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009)).

[8] La. Stat. Ann. § 51:714(B) (1985).

[9] *Id.* § 51:702(4) (2008).

[10] *Heck v. Triche*, 775 F.3d 265, 283 (5th Cir. 2014) ("In determining who is a 'control person,' the Fifth Circuit similarly construes the control person provisions in

does not require participation in the fraudulent transaction."[11]   "But a plaintiff 'must at least show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based.'"[12] The investors allege that STC committed primary violations by selling and holding SIBL CDs in IRA accounts and by misrepresenting the value of the SIBL CDs.  Therefore, to survive summary judgment, the investors must establish a genuine dispute of material fact that SEI directly or indirectly had the power to direct or cause the direction of the sale or valuation of SIBL CDs by STC.  The investors have not met this burden.

As the district court recognized, the contract between STC and SEI is strong evidence that SEI was unable to control STC's primary violations. The contract made STC responsible for pricing the SIBL CDs and for providing accurate information to SEI.  The contract does not assign any role to SEI in the sale or valuation of SIBL CDs.  Further, as the district court noted, the investors' "pleadings contain no evidence demonstrating that the relationship between the companies differed from that contemplated in the contract."[13]

The investors do not refute this evidence and admit that they "do not contend that SEI priced the SIBL CDs."  Nor do the investors allege that SEI was involved in selling the SIBL CDs or in holding the SIBL CDs in IRAs.

---

Section 15 of the Securities Act of 1933, 15 U.S.C. § 77o, and Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a).").

[11] *Id.* (citing *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 958 (5th Cir. 1981)).

[12] *Id.* (quoting *Meek v. Howard, Weil, Labouisse, Friedrichs, Inc.*, No. 95-60680, 1996 WL 405436, at *3 (5th Cir. June 25, 1996) (per curiam)).

[13] *Ahders v. SEI Priv. Tr. Co.*, No. CV 16-00801-BAJ-EWD, 2020 WL 411694, at *3 (M.D. La. Jan. 24, 2020).

Instead, despite the contractual terms, the investors argue that SEI had direct or indirect control over STC's primary violations due to various aspects of SEI's role as a service provider for STC.

First, the investors argue that SEI had the power to stop the primary violations from occurring because "SEI had the ability to deny its platform to the SIBL CD." Because SEI could choose not to allow SIBL CDs on its platform, the investors assert that it is "reasonable to infer that . . . [SEI] also had the power to impose other, lesser, restrictions on the SIBL CD." Viewing the facts in the light most favorable to the investors, SEI's "platform was essential for STC's customers to hold SIBL CDs in their IRAs," and SEI could have prevented STC's primary violations by denying its platform to the SIBL CD.

Nevertheless, a reasonable jury could not conclude that SEI is liable as a control person merely because STC committed primary violations using SEI's services. As SEI aptly notes, "[a]ny number of actors might have some 'power to halt' a fraudulent activity or provide important services to a primarily liable defendant," for instance "if the power company had refused to provide power, [or] the landlord had refused to lease office space." The control-person provision requires more than the power to stop a primary violation for an entity to be liable. The investors must establish that SEI directly or indirectly had "the power to direct . . . the management and policies" of STC.[14] Thus, SEI's power to stop the primary violation is not sufficient, standing alone, to establish a genuine dispute of material fact that SEI had control over STC's primary violations.

Second, the investors argue that because SEI produced and sent statements containing the value of the SIBL CDs to clients, SEI had indirect

---

[14] La. Stat. Ann. § 51:702(4).

control over the valuation of the SIBL CDs. The investors contend that "[t]he facts here are analogous to cases finding sufficient indicia of control when an individual signs a misleading registration statement." That argument is unpersuasive. Signing a registration statement is distinguishable from SEI's role in producing and sending account statements for STC. By signing a registration statement, the signor is certifying the accuracy of the statement's contents and becomes liable for any false statements of fact in the registration statement.[15]

In contrast, the investors do not allege that SEI signed anything relevant to the account statements. In fact, the statements bore STC's name and gave no indication that SEI was involved in their creation. Nor did SEI certify the value of the SIBL CDs contained in the account statements. Rather, STC was responsible for providing SEI with the value of the SIBL CDs and for reviewing the statements. The investors acknowledge that the contract between SEI and STC "placed responsibility for valuing the SIBL CD[s] on STC."

Nevertheless, the investors allege that "SEI retained the ability to decline to send the statements or to require additional steps to be taken before accepting the values it reported out," and therefore SEI had indirect control over the valuation of the statements. As discussed, however, SEI's ability to prevent STC from sending misrepresentations by refusing to send account statements is not evidence that SEI directly or indirectly had the power to direct the management and policies of STC. It is not reasonable to infer that SEI had the power to control STC's valuation of the SIBL CDs solely because SEI sent statements containing the valuation to STC's clients,

---

[15] *See* 15 U.S.C. § 77k(a)(1).

particularly when the contract assigned STC the responsibility for valuing the CDs and providing accurate information to SEI.

Alternatively, the investors argue that SEI is liable as a control person because "SEI controlled the day-to-day affairs of STC by virtue of its management and direction of the back-office functions of STC." While some courts have required proof of control over day-to-day operations *in addition* to proof of control over the primary violations,[16] control over day-to-day operations is not facial evidence of control over a primary violation.[17] The investors appear to conflate these separate requirements. We need not decide whether the investors must establish that SEI had control over STC's day-to-day operations because the investors fail to demonstrate a genuine dispute of material fact that SEI directly or indirectly controlled STC's primary violations.

### III

With regard to SEI's insurers, the investors argue that we should reverse the district court's grant of summary judgment if we reverse the district court's grant of summary judgment for SEI because the ruling for the

---

[16] *See Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 619-20 (5th Cir. 1993) (discussing an Eighth Circuit opinion which "established a two-prong test for a prima facie case for controlling person liability: (1) 'that the defendant [ ] actually participated in (i.e. exercised control over) the operations of the corporation in general'; and (2) 'that the defendant possessed the power to control the specific transaction or activity upon which the primary violation is predicated, but [plaintiff] need not prove that this later power was exercised'" (alteration in original) (emphasis omitted) (quoting *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir. 1985))).

[17] *See Heck v. Triche*, 775 F.3d 265, 283 & n.18 (5th Cir. 2014) (requiring a plaintiff to "show that the defendant had an ability to control the specific transaction or activity upon which the primary violation is based," but noting that "[t]his Circuit has not yet decided whether a plaintiff must show that the alleged controlling person had 'effective day-to-day control' . . . over the controlled person" (quoting *Abbott*, 2 F.3d at 619-20)).

insurers "was based on [the district court's] ruling with respect to SEI." Because the district court properly granted summary judgment to SEI, we also affirm the district court's grant of summary judgment on all claims against the insurers.

*     *     *

For these reasons, the judgment of the district court is AFFIRMED.