REVISED MARCH 25, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2008

Charles R. Fulbruge III
Clerk

No. 06-31203

LANGHOFF PROPERTIES, LLC; TES INVESTMENTS, INC; GLM
INVESTMENTS, INC; NANCY MUNN AND KAY NELSON, in their
official capacities as co-executrixes of the Succession of Glenrose L Roubion

Plaintiffs-Appellants

v.

BP PRODUCTS NORTH AMERICA INC, formerly known as American
Oil Company, formerly known as Amoco Oil Company

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

In 1966, Plaintiffs-Appellants ("Appellants"), directly or through their predecessors in interest, leased immovable property in New Orleans to Defendant-Appellee BP Products North America Inc., formerly American Oil Company or Amoco ("BP Products"), its successors and assigns, for BP Products to operate a fuel and automotive service station there. Well after that lease expired, Appellants initiated this action to recover damages for (1)

contamination of the leased property and (2) possible contamination of adjacent property, also owned by Appellants. They now appeal the district court's grant of summary judgment in favor of BP Products, which the district court grounded solely in its conclusion that a subsequent lease of the same property signed by Appellants and Star Enterprise ("Star") on August 12, 1996 but effective August 15, 1996 (the "Star Lease") constituted a novation of the prior lease (the "Amoco Lease"), which had been executed in 1966 by Appellants and BP Products, had been extended from time to time, and had expired on August 14, 1996. The court further ruled that an effect of this novation was to release BP Products from any duties that it might have owed to Appellants in solido with Star, the last assignee of the lessee's interest under the Amoco Lease and the original lessee under the Star Lease. Convinced that the district court erred in holding that the Star Lease was a novation of the Amoco Lease, we reverse that ruling and the court's dismissal of BP Products based on that ruling, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

Pursuant to the Amoco Lease (executed on June 1, 1966 but effective August 16 of that year), BP Products as lessee occupied Appellants' immovable property located at 2401 South Carrollton Avenue, New Orleans, Louisiana, 70118 (the "Property") and operated a retail service station there. That lease had an initial term of ten years—beginning August 16, 1966 and ending August 15, 1976—with one option to renew for an additional ten years. On August 1, 1975, BP Products exercised this renewal option, extending the term of the Amoco Lease from August 16, 1976 to August 15, 1986. During this renewal term, the parties amended the Amoco Lease to (1) clarify that the initial ten-year renewal term had actually commenced August 15, 1976 and (2) add two additional five-year renewal options which would commence, respectively, on

August 15, 1986 and August 15, 1991. In 1986, BP Products exercised the first of these two additional options.

Thereafter, during that first five-year extension term, a series of assignments of the lessee's interest in the Amoco Lease were made. First, in April 1987, BP Products assigned the lessee's interest in the Amoco Lease to Charles H. Prieur, Jr., who, on that same day, assigned that interest to Texaco Refining and Marketing, Inc. ("TRMI"). Then, in December 1988, TRMI assigned the lessee's interest in the Amoco Lease to Star. Finally, in February 1991, Star exercised the final Amoco Lease option, effective August 15, 1991. Pursuant to this final five-year extension, the Amoco Lease would (and did) expire on August 14, 1996.

On August 12, 1996, Appellants and Star signed a new lease agreement, which created the Star Lease, specifying an initial term of six years that commenced August 15, 1996 (the day after the expiration of the Amoco Lease) and expired August 14, 2002. The Star Lease was essentially identical to the Amoco Lease except that it specified a modest increase in Star's monthly rental commitment, provided Star with one six-year extension option, and contained environmental provisions, one of which addressed the remediation of, and liability for, hydrocarbon contamination (which provisions were not contained in the Amoco Lease). The Star Lease also included a provision titled "Entirety of Agreement" (the "Merger Provision"), which stated:

> No prior stipulation, agreement or understanding, verbal or otherwise, of the parties or their agents shall be valid or enforceable unless embodied in the provisions of this Lease.

In May 1999, the Star Lease was assigned to Motiva Enterprises, LLC ("Motiva"); and in August 2002, Appellants and Motiva extended the term of the Star Lease to February 14, 2003. Consistent with the new going-forward provision for lessee responsibility for environmental clean up at the end of the

Star Lease, Appellants and Motiva also agreed that at the expiration of the Star Lease in February 2003, Motiva would retain an environmental consultant to perform a Phase II site assessment report on the Property.

In June 2004, after the Star Lease had expired, Appellants were informed that the Property's soil and groundwater were contaminated with petroleum products and other toxic substances attributable to the decades of operation of the service station on the premises. They filed the instant lawsuit seeking, inter alia, damages related to (1) contamination of the Property and (2) contamination of their adjacent property at 2423 South Carrollton Avenue and 8023 South Claiborne Avenue (the "Adjoining Property") resulting from migration of petroleum and other toxic agents from the Property.

As one of the named defendants, BP Products filed a motion for summary judgment, asserting that the Star Lease constituted a novation of the Amoco Lease, one effect of which was to release BP Products—as a solidary co-obligor of Star—from any duties to restore the Property and repair any damage caused by its negligent acts and omissions while occupying the Property and operating the service station on it. The district court agreed with BP Products and dismissed it from the suit. In granting BP Products's motion on the ground of novation, the district court focused solely on the Merger Provision of the Star Lease, calling it "completely unambiguous, completely clear" evidence of the parties' intent to novate. And, given that BP Products was deemed a solidary co-obligor with Star, the district court released BP Products from liability to Appellants under the Amoco Lease pursuant to Louisiana Civil Code article 1885; which provides in part that "[a] novation made by the obligee and one of the obligors of a solidary obligation release the other solidary obligors."[1]

---

[1] LA. CIV. CODE ANN. art. 1885.

4

Appellants timely filed a notice of appeal, challenging the district court's conclusion that the Star Lease constituted a novation of the Amoco Lease, absent which BP Products would not be entitled to a release from liability under the Amoco Lease. Having considered the parties' arguments and the applicable law, and reviewed the record on appeal, we reverse the district court's dismissal of BP Products.

## II. ANALYSIS

### A.    Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standard as the district court.[2] Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] We resolve any doubts and draw any reasonable inferences in favor of the nonmoving party.[4] Moreover, "[i]f any ambiguity exists in a contract, a fact issue remains regarding the parties' intent thus precluding a grant of summary judgment."[5]

### B.    Novation

We note at the outset that under Louisiana law, the Amoco Lease constituted an "obligation" between Appellants and BP Products, specifically a conventional obligation or contract.[6] By virtue of this legal relationship,

---

[2] Priester v. Lowndes County, 354 F.3d 414, 419 (5th Cir. 2004).

[3] FED. R. CIV. P. 56(c).

[4] Priester, 354 F.3d at 419.

[5] Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc., 390 F.3d 336, 340 (5th Cir. 2004) (internal quotation omitted).

[6] See LA. CIV. CODE ANN. art. 1756 ("An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something."); see also LA. CIV. CODE ANN. art. 1906 ("A contract is an agreement by two or more parties whereby obligations

Appellants and BP Products each possessed particular rights and owed particular duties with respect to one another. Appellants, as lessors, enjoyed, inter alia, the right to collect rent[7] and owed duties to BP Products such as (1) delivering the Property, (2) maintaining it in a condition suitable for the purpose for which it was leased, and (3) protecting BP Products's peaceful possession of it for the duration of the lease.[8] BP Products, as lessee, enjoyed, inter alia, the right to use and enjoy the Property[9] and owed duties to Appellants such as (1) paying the rent, (2) using the Property as a prudent administrator according to the purpose for which it was leased, and (3) returning it at the end of the lease in the same condition as it was delivered, save for normal wear and tear.[10] Even though courts and practitioners alike have loosely referred to these accompanying rights and duties—especially the duties—as "obligations," this word usage is technically imprecise. Correctly put, though, these rights and duties are correlative to, and flow from, the overarching conventional or legal obligation—here, the conventional obligation or contract of lease. It is important to distinguish the obligation from the rights and duties derived therefrom, as this distinction bears on the concept of novation, which is here at issue.[11] When the Louisiana Civil Code speaks of novation, it is referring to the substitution of

---

are created, modified, or extinguished.").

[7] LA. CIV. CODE ANN. art. 2668.

[8] LA. CIV. CODE ANN. art. 2682.

[9] LA. CIV. CODE ANN. art. 2668.

[10] LA. CIV. CODE ANN. art. 2683.

[11] See SAUL LITVINOFF, 5 LA. CIV. LAW TREATISE: THE LAW OF OBLIGATIONS § 1.1 (2d ed. 2001) (discussing the distinction between the "technical meaning" of obligation, which is defined "as a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee," from its "more general acceptation," which refers to "something that the law or morals command a person to do" and is akin to the word "duty").

a new obligation for an existing one, rather than any substitution of the correlative rights and duties attendant on the old or new obligations.

Within this framework, Appellants insist that the Star Lease could not constitute a novation of the Amoco Lease because (1) the Amoco Lease expired by its own terms before the Star Lease took effect,[12] and (2) BP Products failed to meet its Civil Code-imposed burden of proving Appellants' "clear and unequivocal" intention to novate.[13] We agree on both scores.

1.    Existence of Initial Obligation

Louisiana Civil Code article 1879 defines novation as "the extinguishment of an existing obligation by the substitution of a new one."[14] It is foundational, then, that for a novation to even occur, there must be an existing obligation for the new one to replace. Here, exercise of the final renewal option had extended the Amoco Lease for five more years, commencing August 15, 1991 and expiring ipso facto on August 14, 1996. It is of no significance whatsoever that the ensuing Star Lease was signed on August 12, 1996, a couple of days before the Amoco Lease expired: All know that it is the specified effective date that controls, not the date that the document happens to be signed. And the Star Lease specified that it would only take effect on August 15, 1996, the day after the Amoco Lease expired. As such, the basic code definition of novation eschews

---

[12] BP Products advances that Appellants failed to raise the argument before the district court that the Amoco Lease had expired by its own terms before the Star Lease took effect. Generally, arguments not raised in the district court are waived. See, e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 317 (5th Cir. 2002). We will consider an issue raised for the first time on appeal, though, if it is a purely legal one and if consideration is necessary to avoid a miscarriage of justice. In re Goff, 812 F.2d 931, 933 (5th Cir. 1987). Particularly in light of the discrete facts contained in the record and exhibits which obviously detail the effective dates of expiration and commencement of the two leases, we conclude that such circumstances are present and therefore address Appellants' argument.

[13] See LA. CIV. CODE ANN. art. 1880 ("The intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed.").

[14] LA. CIV. CODE ANN. art. 1879 (emphasis added).

a holding that the Star Lease constituted a novation of the Amoco Lease: The Amoco Lease was one obligation; it expired (albeit with particular duties of the parties remaining to be performed); the Star Lease came into effect after the Amoco Lease expired; ergo the Star Lease was not a novation of the Amoco Lease but a wholly new obligation, with all rights and duties of the parties thereto on a going-forward basis only.

Notwithstanding that it was a legal impossibility for a novation to have occurred under these circumstances, the district court relied on the Merger Provision as the legal basis for its holding that the Star Lease was a novation of the Amoco Lease. That reliance was misplaced. Louisiana Civil Code article 1880 states that "[t]he intention to extinguish the original obligation must be clear and unequivocal. Novation may not be presumed."[15] Further, Louisiana law recognizes that the intention to novate may be determined from the express terms of the agreement in question, the nature of the transaction, and the facts and circumstances surrounding the transaction.[16] And, the burden of proving novation lies with the party insisting that one occurred—here, BP Products.[17]

2.      Intention to Novate

The district court appears to have been misled by the forceful argument of counsel for BP Products to rely on the Merger Provision in holding that a novation had occurred.[18] In inferring that the Merger Provision worked to substitute the Star Lease for the Amoco Lease, the district court remarked that

---

[15] LA. CIV. CODE ANN. art. 1880 (emphasis added).

[16] City of Donaldsonville v. Thiac, 542 So. 2d 1111, 1116 (La. App. 1st Cir. 1989).

[17] Placid Oil Co. v. Taylor, 325 So. 2d 313, 316 (La. App. 3d Cir. 1976).

[18] We say "appears" because the district court did not favor us or the parties with a written opinion; rather, it only granted BP Products's motion for summary judgment at the conclusion of the hearing with but a terse explanation of its grounds. Accordingly, our analysis of the district court's reasons for its decision is necessarily based on the transcript of that hearing.

it found the clause to be "completely unambiguous, completely clear." Even though we too find it unambiguous, we are convinced that the effect given to this provision by the district court is not merely wrong but conflicts directly with a vast body of commercial contract law, both in Louisiana and elsewhere. The Star Lease's boilerplate version of this ubiquitous provision does nothing more or less than "merge" all earlier negotiations and communications that led up to the confection and execution of the new lease contract into the four corners of the agreement. It is in no way probative of the parties' intent concerning a novation and should never have entered into the district court's contract construction calculus. Rather, the merger clause should have been given nothing more than its widely recognized meaning, viz., ensuring that all of the issues negotiated by the parties to the Star Lease were incorporated into the written lease agreement and that no prior communications during the negotiations, written or oral, could be used subsequently to alter the rights and duties set forth therein.[19] Even if we were to assume, arguendo, that the Merger Provision of the Star Lease is ambiguous, i.e., that it is reasonably susceptible to more than one interpretation,[20] we would then note that the Star Lease was drafted by Star, so the Merger Provision would have to be construed in favor of Appellants, as the non-drafting party.[21] Still, there is just no way to read the Merger Provision as demonstrating that either party intended a novation of the expired Amoco Lease, much less that BP Products had met its burden of proving that Appellants and

---

[19] See, e.g., Condrey v. SunTrust Bank of Georgia, 429 F.3d 556, 564 (5th Cir. 2005) ("By its very definition, an integration or merger clause negates the legal introduction of parol evidence; it is a 'provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document.'" (quoting BLACKS LAW DICTIONARY 683 (6th ed. 1983))).

[20] Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc., 390 F.3d 336, 339 (5th Cir. 2004) ("A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation.").

[21] See, e.g., In re Katrina Canal Breaches Litig., 495 F.3d 191, 207 (5th Cir. 2007).

Star had the "clear and unequivocal" intention to novate that obligation when they entered into the Star Lease. As a conventional obligation under the Civil Code, the Amoco Lease was "dead and gone"—and thus legally insusceptible of novation—by the time the Star Lease came into existence.

And, if that were not enough, the differences between the two leases are so negligible that they are insufficient, in and of themselves, to support a conclusion that a novation was intended by the parties to the Star Lease, pursuant to Louisiana Civil Code article 1881.[22] Even though the Star Lease contains a marginal increase in Star's monthly rental commitment, a six-year extension option, environmental provisions, and a merger clause, not found in the Amoco Lease, these variances are not probative of the parties' intention to confect a novation. In sum, the Star Lease was a new obligation, intended to govern the parties' rights and duties going forward and not affecting any prior obligations between these parties and any third parties.

## III. CONCLUSION

When the Star Lease came into existence on August 15, 1996, there was no existing prior obligation to novate, the Amoco Lease having expired the day before. In addition, there is no "clear and unequivocal" evidence of either Star's or Appellants' intention to novate the Amoco Lease, and the variances between the two leases are not probative of an intent of the parties to enter into a

---

[22] Louisiana Civil Code article 1881 provides:

Novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation.

Novation takes place also when the parties expressly declare their intention to novate an obligation.

Mere modification of an obligation, made without intention to extinguish it, does not effect a novation. The execution of a new writing, the issuance or renewal of a negotiable instrument, or the giving of new securities for the performance of an existing obligation are examples of such a modification.

LA. CIV. CODE ANN. art. 1881.

novation of the Amoco Lease. We therefore (1) reverse the district court's grant of summary judgment in favor of BP Products, (2) hold that the Star Lease was a new contract and not a novation of the expired Amoco Lease, and (3) remand for further proceedings consistent with this opinion. And, inasmuch as the district court suggested that its dismissal of BP Products also covered Appellants' claims against BP Products regarding the Adjoining Property, we make clear that our reversal also extends to Appellants' claims regarding that property. In addressing Appellants' Adjoining Property claim on remand, the district court should heed the applicability of Louisiana Civil Code article 667 and the duties (and liability) that it imposes, for it is those duties and not the duties of a lessee that control the so-called servitude of neighborliness.[23] Finally, because we reverse the rulings of the district court, all of which were premised on its conclusion that there was a novation, we do not reach the issue whether BP Products is a solidary co-obligor with Star and other defendants vis-à-vis the Appellants, as to either the Property or the Adjoining Property.[24] REVERSED and REMANDED.

---

[23] See LA. CIV. CODE ANN. art. 667 ("Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."); see also A.N. YIANNOPOULOS, 4 LA. CIV. LAW TREATISE: PREDIAL SERVITUDES § 51 (3d ed. 2004).

[24] Accordingly, we do not address the effect to be given Appellants' legal assertion that BP Products is solidarily liable with the other defendants on this determination.