# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 22, 2011

Lyle W. Cayce
Clerk

No. 10-31145

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

HEULETTE C. FONTENOT, JR.,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The district court dismissed the superseding indictment because it did not state a crime against Heulette C. Fontenot, Jr. for knowingly and willfully making false statements to a financial institution insured by the Federal Deposit Insurance Corporation (FDIC) and knowingly making false statements for the purpose of influencing the action of a bank insured by the FDIC. The United States appeals.

Fontenot made the allegedly false statements on loan applications to refinance his residence. By signing the loan applications, he affirmed all information he provided on the loan applications was "true and correct." He failed to list, however, an illegal $100,000 campaign loan under "outstanding

No. 10-31145

debts." On this basis, the superseding indictment thus charged that Fontenot had knowingly made false statements. The district court concluded that Fontenot's "statements" were literally true because the illegal loan was an absolute nullity and consequently was not a debt that ever existed. We believe that the district court nailed it and we affirm.

I.

A.

Because the district court dismissed the superseding indictment[1] on the basis that it failed to state an offense against Fontenot, we provide it here, in its entirety:

> 1) Defendant Heulette C. Fontenot ("Fontenot") was a resident of Livingston Parish, Louisiana, who was first elected to the Louisiana State Senate ("the Senate") in November 1999.
>
> 2) On or about July 7, 1999, Fontenot solicited a $100,000 cash loan from Businessmen #1 and #2 in connection with Fontenot's campaign for the Senate. Fontenot asked for the money to be in cash and assured the businessmen that he would take other steps to conceal the cash loan since it would be a violation of Louisiana's campaign finance law.[2]
>
> 3) On or about July 8, 1999, Fontenot met Businessman #1 at an office in Livingston Parish. The two men subsequently drove their vehicles down a secluded gravel road. Businessman #1 provided Fontenot with a large tote bag and a smaller bank bag containing a total of $100,000 in cash. Fontenot took the cash to his residence where he hid the cash under the insulation in the attic. Fontenot

---

[1] The grand jury had returned an indictment against Fontenot on May 6, 2010. The indictment and superseding indictment contained the same factual allegations. The indictment, however, contained three charges against Fontenot, which were collapsed into the two charges in the superseding indictment.

[2] The indictment, superseding indictment, district court order, and the parties' briefs say little about the reason the $100,000 campaign loan violated Louisiana law. The parties appear to agree that the illegality lies with the loan's amount and its non-disclosure.

No. 10-31145

then took the two bags into his backyard and burned them in order to conceal evidence of the transaction.

4) On several occasions from in or about 2000 through on or about July 23, 2004, Fontenot discussed repaying the cash loan with Businessmen #1 and #2, but Fontenot never made any repayments on the loan and it remained outstanding in its entirety.

5) At all times relevant to this Indictment, Chase Manhattan Bank and Flagstar Bank were financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

### Count 1

6) Paragraphs 1 through 5 of the Indictment are incorporated herein.

7) On or about October 20, 2001, in the Middle District of Louisiana, the defendant, Heulette C. Fontenot, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the FDIC, did knowingly and willfully make materially false and fraudulent statements and representations to a financial institution insured by the FDIC, in that Fontenot signed a "Uniform Residential Loan Application" certifying that all his debts were listed thereon, when, as defendant well knew, the $100,000 cash loan was not listed.

The above is a violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

### Count 2

8) Paragraphs 1 through 5 of this Indictment are incorporated herein.

9) From on or about July 23, 2004, to on or about August 13, 2004, in the Middle District of Louisiana, defendant Heulette C. Fontenot knowingly made a false statement for the purpose of influencing the action of Flagstar Bank on a bank loan as described below.

No. 10-31145

10) On or about July 23, 2004, Fontenot signed a "Uniform Residential Loan Application" certifying that all his debts were listed thereon, when, as defendant well knew, the $100,000 cash loan was not listed. Defendant caused the application to be submitted to Flagstar Bank on or about August 3, 2004.

11) On or about August 10, 2004, Fontenot signed another "Uniform Residential Loan Application" certifying that all his debts were listed thereon, when, as defendant well knew, the $100,000 cash loan was not listed. Defendant caused the application to be submitted to Flagstar Bank on or about August 13, 2004.

The above is a violation of Title 18, United States Code, Sections 1014 and 2.

We turn now to the documents signed by Fontenot. Under the section heading on the Uniform Residential Loan Application entitled, "Liabilities and Pledged Assets," applicants are directed to "[l]ist the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale."

Thus, from the superseding indictment and the language on the loan application, we garner the following facts: the "loan"[3] from the two businessmen to Fontenot was illegal under Louisiana's campaign finance law; there was no agreement between the parties for Fontenot to repay the money he received at the time he received the money; Fontenot was required to list all "debts" on his loan applications.

B.

---

[3] The superseding indictment refers to the money Fontenot received from Businessmen #1 and #2 as a "cash loan," although the allegations of the crime make clear that the businessmen only transferred money to Fontenot as there was no expectation of Fontenot's repayment at the time Fontenot received the money.

No. 10-31145

Fontenot's trial was scheduled to begin on October 25, 2010. He filed several pre-trial motions, including several motions to dismiss the indictment or individual counts of the indictment. On the morning of jury selection, Fontenot made an oral motion to dismiss the superseding indictment, arguing that, because the illegal campaign loan was a legal nullity under Louisiana law, he did not knowingly make false statements by omitting the campaign loan from his loan applications. Fontenot contended that, based on the explicit allegations made in the superseding indictment and on Louisiana law, there was no debt in existence at the time he signed and certified the loan applications because the undisclosed campaign loan had an illegal cause under Louisiana law–that is, the circumvention of Louisiana's campaign finance law.

The Government opposed the motion in writing on October 26. The district court heard arguments from counsel the same day. After arguments concluded, the court dismissed the superseding indictment in an oral ruling on the basis that Fontenot made no false statements on the loan applications. The district court reasoned that, because the superseding indictment states that the undisclosed $100,000 cash loan violated Louisiana campaign finance law, then the contract between Fontenot and the two businessmen had an illegal cause; consequently, it was an absolute nullity and deemed never to have existed. Because the loan is deemed never to have existed, the district court held that Fontenot did not knowingly make false statements on the loan applications by omitting the campaign loan as an outstanding debt. Simply put, the district court determined that there was no debt for Fontenot to report. On October 28, 2010, the district court filed similar written reasons and entered an order of dismissal. The Government timely appealed, invoking our jurisdiction under 18 U.S.C. § 3731 and 28 U.S.C. § 1291.

No. 10-31145

II.

A.

"The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then consideration of the motion is generally proper." *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (internal quotation marks and citations omitted). We review the sufficiency of an indictment *de novo*. *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999) (citing *United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998)). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *Id.* (citing *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

B.

Count One of the superseding indictment charged Fontenot with violating 18 U.S.C. § 1001(a)(2).[4] To state an offense under this section, the Government must properly allege: "(1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." *United States v. Elashyi*, 554 F.3d 480, 497 (5th Cir. 2008) (internal quotation marks omitted). Count Two of the superseding indictment charged Fontenot with violating 18 U.S.C. § 1014.[5] To

---

[4] This section prohibits "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" in "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." 18 U.S.C. § 1001(a)(2).

[5] This section prohibits "knowingly mak[ing] any false statement . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee,

state an offense under 18 U.S.C. § 1014, the Government must adequately allege that "(1) the defendant knowingly and willfully made a false statement to the bank, (2) the defendant knew that the statement was false when he made it, (3) the defendant made the false statement for the purpose of influencing the bank to extend credit, and (4) the bank to which the false statement was made was federally insured." *United States v. Sandlin*, 589 F.3d 749, 753 (5th Cir. 2009). Both offenses thus require that Fontenot made a false statement. The district court found the false statement element insufficiently alleged in the superseding indictment as a matter of law. The question initially before us is whether the request that applicants list all "outstanding debts" could have included the $100,000 "loan" between Fontenot and the two businessmen; stated differently, the question is whether the transaction created a "debt". Thus, our analysis focuses on the word "debt." If the loan constituted a debt, his certification is false, but if his loan did not constitute a debt, his certification is not false.

First, we note that "debt" is not defined in the federal false statement statutes or the loan application, so the question is where must we look to determine the definition because without a definition of the crucial term, then we do not know whether the omission of the loan was a false statement.

Second, we start with the proposition that this transfer of money was not a debt that Fontenot was obligated to list among his liabilities unless it lawfully could be enforced against him as a debt.[6] If it is not a liability, it is not a debt

---

or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor . . . ." 18 U.S.C. § 1014.

[6] Indeed, the loan application, under the heading entitled, "Liabilities and Pledged Assets," directs applicants to list, for each "outstanding debt," the "creditor's name, address, and account number." The plain language of the loan application indicates that the loan application speaks only to recognized, enforceable debts under the law.

under the terms of the certification.  Further, a debt must arise from an agreement, that is, a contract between two or more persons.

Third, if the debt is enforceable, then it is only enforceable under the laws of Louisiana.  If Businessmen #1 and #2 were to demand Fontenot's payment, their only recourse would be to avail themselves of Louisiana law in Louisiana courts.[7]  Otherwise, Fontenot had no outstanding debt or liability owed to them except perhaps a debt of gratitude.  *See United States v. Hixon*, 987 F.2d 1261, 1266–67 (6th Cir. 1993) (referencing Georgia corporate law to determine whether the defendant, who had been convicted under 18 U.S.C. § 1001 for falsely stating that he was not self-employed when applying for disability benefits, was considered self-employed if he was the sole owner of a Georgia corporation for which he also served as an officer); *United States v. Gahagan*, 881 F.2d 1380, 1382–83 (6th Cir. 1989) (analyzing Colorado statutory law to determine whether defendant, who had been convicted under 18 U.S.C. § 1001 for failing to report his ownership of a Jaguar in a financial report filed with his probation officer, was the "owner" of the vehicle at the time of the false statement because Colorado was where the defendant and transferee resided and where the vehicle was registered).  Hence, we turn to Louisiana law.

## C.

No one challenges that a lawful debt under these facts must arise from an agreement, that is, a contract between two or more persons.  A contract, under Louisiana law, "is an agreement by two or more parties whereby obligations are created, modified, or extinguished."  LA. CIV. CODE ANN. art. 1906 (2009).  The obligation between the parties *must* have a lawful cause, "cause" defined as "the

---

[7] The transaction between Fontenot and Businessmen #1 and #2 occurred in Louisiana, all were citizens of Louisiana, the loan was to help finance Fontenot's bid for the Louisiana state senate, and all three men, according to the superseding indictment, knew the loan violated Louisiana's campaign finance law.

No. 10-31145

reason why a party obligates himself."[8]  *Id.* arts. 1966, 1967.  "The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy."  *Id.* art. 1968.  If the cause of an obligation is unlawful or violates public policy, then one of the requirements for formation of the contract is lacking.  As a consequence, the "contract is null." *Id.* art. 2029.  Of the two types of null contracts under Louisiana law, "[a] contract is absolutely null when it violates a rule of public order . . . ."  *Id.* art. 2030.  "Thus, if a contract has as its cause or its object the violation or circumvention of a state statute, it is an absolute nullity in contravention of public order."  *Bach Inv. Co. v. Philip*, 722 So.2d 1222, 1223 (La. Ct. App. 5th Cir. 1998).  An absolutely null contract "is deemed *never to have existed.*"  LA. CIV. CODE ANN. art. 2033 (2009) (emphasis added).

The superseding indictment states that Fontenot solicited the cash loan in connection with his state senate bid, and the businessmen agreed to supply the cash for that purpose.  According to the indictment itself, he requested that the loan be in cash and assured the two businessmen that "he would take other steps to conceal the cash loan *since it would be a violation of Louisiana's campaign finance law.*"  The superseding indictment further alleges that, true to his word, Fontenot destroyed the two bags that were used in the exchange of the cash between Fontenot and Businessman #1 the next day.  Moreover, all parties agree, as the superseding indictment specifically alleges, that the loan violated Louisiana law and public policy.  Thus, under the principles of Louisiana law described above, we conclude that the cause of the obligation, or the reason the parties obligated themselves, was to circumvent Louisiana's

---

[8] A valid contract also requires: (1) that the parties possess the capacity to contract; (2) that the parties' mutual consent be freely given; and (3) that there be a certain object for the contract.  *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 n.4 (5th Cir. 1996) (citing *Keller v. Sisters of Charity*, 597 So.2d 1113, 1115 (La. Ct. App. 2d Cir. 1992)).

No. 10-31145

campaign finance law through the covert financing of Fontenot's state senate campaign. As such, the entire agreement, i.e., the contract -- such as it may have been -- is absolutely null and the "loan agreement," therefore, is deemed never to have existed. *See Wynne v. New Orleans Clerks & Checkers Union, Local 1497, Int'l Longshoremen's Ass'n*, 550 So.2d 1352, 1355 (La. App. Ct. 4th Cir. 1989) ("[I]f a contract has as its cause or its object circumvention of state law, it will be held an absolute nullity in contravention of the public order." (citing cases)).[9] If the loan is deemed absolutely null, then there exists no debt under the laws of Louisiana. Or to use the words of the loan application, there is no liability nor any "outstanding debt." We thus hold that, because the money Fontenot received from the two businessmen did not create a "debt," Fontenot did not make false statements on the loan applications when he failed to list the $100,000 as an "outstanding debt."

## III.

For the reasons herein given, the judgment of the district court is

AFFIRMED.

---

[9] We are further persuaded in our reasoning by Chief Judge Lottinger's concurrence in *Green v. Capital Insurance Co.*, 623 So.2d 136, 138–39 (La. Ct. App. 1st Cir. 1993) (Lottinger, C.J., concurring). In *Green*, the Court of Appeal reversed a grant of summary judgment to a holder of a promissory note because the maker of the note had raised material defenses to the note's enforcement. *Id.* at 136–38. One of the defenses was the alleged illegality of the note's underlying obligation as its purpose was to circumvent Louisiana campaign finance law through a straw lending agreement to benefit the money's final recipient, an individual running for state office. *Id.* at 138. Although the panel did not reach the merits of the defense, Chief Judge Lottinger, in a concurring opinion, concluded that because of Louisiana's public policy against the covert financing of political campaigns, and under the previously discussed Louisiana Civil Code articles, the entire transaction–including the promissory note that evidenced the obligation–was an absolute nullity, void from its inception, and unenforceable. *Id.* at 138–39 (Lottinger, C.J., concurring).