# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

No. 16-30328

United States of America, ex rel, TERRY D. MCLAIN; J. LEN HODGES,

Plaintiffs - Appellants

v.

FLUOR ENTERPRISES, INCORPORATED; SHAW ENVIRONMENTAL, INCORPORATED; CH2M HILL CONSTRUCTORS, INCORPORATED,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CV-11229

Before JOLLY, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Relators Terry D. McLain and J. Len Hodges filed the instant *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. § 3729, alleging that defendants Fluor Enterprises, Inc. ("Fluor"), CH2M Hill Constructors, Inc. ("CH2M"), and Shaw Environmental, Inc. ("Shaw") submitted to the government false claims for payments for temporary housing units ("THUs"). Their false claim allegation is based on defendants' failure to comply with

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 16-30328

Louisiana liquefied petroleum ("LP") statutes when installing tens of thousands of THUs through their subcontractors in the aftermath of Hurricanes Katrina and Rita.

The district court granted summary judgment in favor of Fluor, Shaw, and CH2M (collectively, "the Contractors") and dismissed the relators' complaint. The relators timely appeal. Their primary argument is that the installation contracts at issue were "null" under Louisiana law, and any claims for payment based on those null contracts were therefore "false" claims in violation of the FCA. We AFFIRM.

I.

In the wake of Hurricane Katrina—one of the most destructive natural disasters in our nation's history—hundreds of thousands of individuals were left without their homes. Less than a month later, Hurricane Rita wreaked additional havoc on an already storm-ravaged coast. On the day Katrina made landfall, August 29, 2005, FEMA issued Solicitation No. HSFEHQ-05-R-0046, which requested proposals to provide disaster relief services under FEMA's Individual Assistance program. Between September 2005 and November 2006, FEMA facilitated the installation of over 100,000 THUs in areas along the Gulf Coast that were impacted by Hurricanes Katrina and Rita. After their proposals were accepted, defendants Fluor, CH2M, and Shaw entered into contracts with FEMA to "haul and install" THUs for Louisiana residents who were displaced by the devastation from the hurricanes. Inside the trailers, appliances and plumbing—from the stoves, to the refrigerators, to the running water—were fueled by LP gas. The contracts between FEMA and the Contractors were "cost-reimbursement contracts on a cost-plus-fixed-fee basis." Under these contracts, CH2M, Shaw, and Fluor were entitled to receive payment for works in progress and other costs associated with fulfilling the obligations of the contracts they had with the Government.

No. 16-30328

FEMA directed each of the Contractors to work to get as many "heads in beds" as quickly as possible. Fluor, CH2M, and Shaw worked through subcontractors to install these housing units. The subcontracts with the installers contained language requiring the subcontractor installers to perform work "in accordance with all applicable federal, state, and local codes and regulations." In pertinent part, the subcontracts contained some variation of the following language:

> All work performed shall be in accordance with all applicable federal, state and local codes and regulations. The provisions herein and typical details shall not be construed as lowering standards established by local laws, ordinances or regulations.

> The contractor [the installers] must be, or have employed, registered licensed technicians . . . to conform to State and local requirements for installing and/or hooking up systems or repairing defects involving their particular trade. It is the contractor's responsibility to obtain all proper licenses and permits to set-up the units. Locally required permits shall be applied for within 3 working days of work order issuance. Units shall be ready to occupy within 3 days of permit issuance.

> The contractor shall be responsible for obtaining necessary permits associated with placing and installing the unit and utility installation. Permits shall be applied for within 3 working days of work order issuance. Unit shall be ready to occupy within 3 days of permit issuance. . . .

In January 2006, the Liquefied Petroleum Gas Commission ("LPGC") communicated to CH2M, Shaw, and Fluor that their THU installations were not in compliance with Louisiana LP regulations due to the subcontractors' lack of Class II LP gas installation permits.[1] Nevertheless, FEMA instructed

---

[1] At the time, both the Contractors and FEMA were unsure as to whether the LP gas regulations applied to them; before Hurricane Katrina, the LPGC apparently did not enforce LP gas regulations including permit requirements and pressure/leak check testing with respect to the installation of FEMA-owned THUs.

No. 16-30328

the Contractors to continue the installations in accordance with the regulatory requirements and then retrofit THUs that had already been installed to render them compliant with the regulations. Fluor, Shaw, and CH2M also began applying for the proper permits once the LPGC asserted that they were violating the Louisiana LP gas regulations.[2] Although each defendant received citations related to these violations, CH2M, Shaw, and Fluor worked with the LPGC to reach Settlement Agreements that, *inter alia*, dismissed the citations, acknowledged that a dispute existed as to whether "certain rules and regulations promulgated by the LPGC" applied to the Contractors, and in the case of CH2M, noted that CH2M had "in good faith achieved compliance with the LPGC's rules and regulations."

Relators McLain and Hodges, both LPGC inspectors, filed the instant *qui tam* action under seal in the Eastern District of Louisiana on December 21, 2006. The government investigated the allegations pursuant to 31 U.S.C. § 3730(b) and declined to intervene in December 2012. The case was later unsealed and the First Amended Complaint was served upon the defendants in early 2013.

Over the course of almost two years, a number of Counts from the First Amended Complaint were dismissed. In an Order dated August 8, 2013, the district court dismissed Counts 3, 5, 6, and 9. In November 2014, the district court issued an Order addressing Motions to Dismiss by Fluor and CH2M, Motions for Summary Judgment by Fluor and Shaw, and a Motion to Strike and Amend the Complaint by the relators. The motions for summary judgment were granted in part and denied in part, while the remaining motions were denied. The court granted the relators leave to file a Second Amended Complaint "setting forth specific facts showing that the defendants failed to

---

[2] LA. STAT. ANN. § 40:1841-1852 and LA. ADMIN. CODE tit. 55, part IX.

obligate their subcontractors to comply with state LP gas statutes and regulations." *U.S. ex rel. McLain v. Fluor Enterprises, Inc.*, No. 06–11229, 2015 WL 5321692, at \*1 (E.D. La. Sept. 11, 2015); *see also U.S. ex rel. McLain v. Fluor Enterprises, Inc.*, 60 F. Supp. 3d 705, 722 (E.D. La. 2014).

The Second Amended Complaint is the operative complaint in this case. In the district court's September 2015 Order, it acknowledged that the relators went outside the scope of the leave given to them by the court, alleging not simply a theory of nullity, but also that "defendants misrepresented to FEMA that their subcontractors and staff had the proper training and licensing needed to perform LP gas installations or were in the process of receiving these qualifications." *McLain*, 2015 WL 5321692 at \*2. Furthermore, in its Order, the district court granted summary judgment to each Contractor as to the "nullity" claims.

The district court issued an additional Order on October 8, 2015, clarifying that CH2M's cross motion for summary judgment was granted, and the relators' claims against CH2M were dismissed. In November 2015, the relators filed a Motion for Voluntary Dismissal of Pending Claims, in which they requested dismissal of pending claims related to "false statement" allegations against Fluor and Shaw, expressing a desire to preserve the "nullity" claims against the Contractors for appeal. The district court granted the relators' voluntary dismissal motion. Thus, only the "nullity" claims remained. In a final judgment, the district court dismissed the claims against all defendants, including those based on the nullity of the subcontracts and those against CH2M.

The relators timely appealed. In their Notice of Appeal, the relators advise that they are appealing the district court's orders with respect to Counts

No. 16-30328

1, 4, and 7 of the Second Amended Complaint,[3] including the district court's dismissal of "all claims or counts based on the nullity and falsity of claims arising from Defendants' installation subcontracts (and payments and damages therefrom)."

## II.

This court reviews the district court's grant of summary judgment de novo and applies the same standard as the district court. *Langhoff Props., LLC v. BP Prods. N. Am., Inc.*, 519 F.3d 256, 260 (5th Cir. 2008). Summary judgment shall be granted by a court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A movant must support such a showing by citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id.* 56(c)(1)(a). The court weighs any reasonable inferences or doubts in favor of the non-moving party. *Langhoff Props.*, 519 F.3d at 260.

## III.

The relators contend that defendants Shaw, CH2M, and Fluor filed false claims against FEMA, a government agency, in violation of the FCA. The foundation of the relators' argument that the reimbursement claims were false is that the defendants' subcontracts were null because the subcontractors failed to comply with Louisiana statutes and regulations governing LP gas system installation.

---

[3] Count 1 applies to Fluor, Count 4 applies to Shaw, and Count 7 applies to CH2M. Each of these Counts alleges violations of the False Claims Act as a result of the THU installations.

6

No. 16-30328

A.

The FCA inflicts treble damages and civil penalties on entities that "knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A) (2012); *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 364 (5th Cir. 2014). In analyzing a claim under the FCA, this circuit considers whether the plaintiff has alleged the following elements:

(1) a false statement or fraudulent course of conduct;

(2) made or carried out with the requisite scienter;

(3) that was material; and

(4) that is presented to the Government.

*U.S. ex rel. Steury v. Cardinal Health (Steury I)*, 625 F.3d 262, 267 (5th Cir. 2010) (citing *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 468 (5th Cir. 2009)).

With respect to the four elements, "knowingly" is the "requisite scienter." To "knowingly" make a false statement or engage in fraudulent conduct, one "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Moreover, no "proof of specific intent to defraud" is "require[d]." *Id.* § (b)(1)(B). The term "claim" is broadly defined, encompassing "any request or demand, whether under a contract or otherwise, for money or property" that is presented to the Government; "claim" does not, however, encompass compensation for federal employment. 31 U.S.C. § 3729(b)(2)(A), (B).

A successful FCA claim often hinges on whether the false claim was "material." The statute defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Id.* § (b)(4). As the Supreme Court noted recently, "[t]he materiality

No. 16-30328

standard is demanding." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016). That the Government has conditioned payment on a provision in the contract may be "relevant" to determining whether the provision is material, but it is not "dispositive." *Id.* Likewise, noted the Court, "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.*

## B.

The basis of the relators' claim is that the installation subcontracts were "null" under Louisiana law, and that the Contractors, who paid the subcontractors for their installation work, filed a claim with the federal government based on these alleged null subcontracts, and thus violated the FCA.[4] It is undisputed that the subcontractors did not possess "Class II" permits, described by Title 55, Section 113 of the Louisiana Revised Code, before beginning their work in installing the THUs. The relators therefore contend that because the subcontracts resulted in THU installations performed by subcontractors without Class II permits, the subcontracts allegedly violated a rule of public order and were null under Louisiana law.

---

[4] The relators present an alternative argument in their Reply Brief that the falsity of the Contractors' claims could be based upon an implied certification theory in the light of *Escobar*, 136 S. Ct. 1989. Under a theory of implied certification, "the False Claims Act encompasses claims that make fraudulent misrepresentations, which include certain misleading omissions." *Id.* at 1999. The relators contend that by submitting claims for reimbursement to FEMA, the Contractors were impliedly certifying that they were in compliance with the LP gas regulations—which, in the relators' view, was inherently misleading. We will not address this argument because it was presented for the first time in the relators' Reply Brief. We have said that appellants "cannot raise new issues in a reply brief; [they] can only respond to arguments raised for the first time in the appellee's brief." *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F.2d 1023, 1026 (5th Cir. 1992) (quoting 16 C. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3974, at 428 (1977)). Further, because we do not address relators' argument raised in their Reply Brief, we deny as moot the Contractors' opposed motions to file sur reply briefs.

Furthermore, the relators assert that the subcontracts were likewise "unenforceable" under Section 181 of the Restatement (Second) of Contracts.[5] The relators argue that because the subcontracts are null and unenforceable, any claims for payment made by the Contractors to FEMA were "false" under the FCA. The relators point to Article 2030 of the Louisiana Civil Code, which states:

> A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
>
> Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.

LA. CIV. CODE ANN. art. 2030.

To support their contract nullity argument, the relators during oral argument pointed to two cases from within this circuit: *Davis v. Parker*, 58 F.3d 183 (5th Cir. 1995), and *United States v. Fontenot*, 665 F.3d 640 (5th Cir. 2011). In *Davis*, an attorney entered into a business transaction with his client in violation of Rule 5-104(A) of the Louisiana Code of Professional Responsibility. *Davis*, 58 F.3d at 189–90. Under this rule, before an attorney

---

[5] Section 181 provides that

> [i]f a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if
>
> (a) the requirement has a regulatory purpose, and
>
> (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.

RESTATEMENT (SECOND) OF CONTRACTS § 181 (AM. LAW INST. 1981). To support their incorporation of the Restatement (Second) of Contracts into their argument, the relators point to Supreme Court case law indicating that federal contracts may be interpreted through the application of general contract principles. *See Mobil Oil Explor. & Prod. v. United States*, 530 U.S. 604, 607-08 (2000) (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.").

may enter into a business transaction with a client, the attorney has a fiduciary obligation to "fully disclose" all relevant information and inform the client that the client should contact outside counsel.  Anything less than full disclosure may constitute a breach of fiduciary duty by the attorney.  Although the case was primarily focused on the relevant statute of limitations rather than the issue of nullity, this court in *Davis* accepted the client's classification of the claim based on a contract that led to a breach of fiduciary duty as a "nullity claim."  *Id.* at 190.

The facts of *Fontenot* similarly involved a contract with an illicit object: an illegal loan to support a political campaign.  This court found that "the cause of the obligation, or the reason the parties obligated themselves, was to circumvent Louisiana's campaign finance law through the covert financing of [the] state senate campaign."  *Fontenot*, 665 F.3d at 646.  Thus, the contract was deemed a nullity under Article 2030.  *Id.*

We find the relators' reliance on *Davis* and *Fontenot* unconvincing and note that these two decisions have little persuasive authority in the instant case.  In *Davis*, the client's nullity argument hinged on the relationship between the attorney and the client; that is, the very formation of the business transaction contract was effectively *void ab initio* because it directly contradicted a mandate imposed by the Louisiana Code of Professional Responsibility.  *See Davis*, 58 F.3d at 189–90.  Similarly, in *Fontenot*, the "illegal [campaign] loan was an absolute nullity" because its object was a violation of Louisiana's campaign finance law.  *Fontenot*, 665 F.3d at 642, 646-47.  Here, conversely, the object of the subcontracts was to obligate the subcontractors to install the THUs "in accordance with all applicable federal, state and local codes and regulations."  Thus, the subcontracts here do not satisfy the criteria of "absolute nullity."

No. 16-30328

We therefore hold that Article 2030 does not render the subcontracts at issue "absolutely null," a classification that would effectively cause them to be *void ab initio*. Whether or not the subcontractors possessed the Class II permits did not affect their ability to enter into the subcontracts with Fluor, CH2M, and Shaw. Further, the object of the subcontracts was neither "illicit" nor "immoral," because the subcontracts obligated the subcontractors to comply with applicable codes and regulations. *See* LA. CIV. CODE ANN. art. 2030. Hence, the subcontracts did not "violate[] a rule of public order," and consequently are not "null" under Article 2030.[6] For generally the same reasons, the Contractors' agreements with FEMA are not unenforceable under Section 181 of the Restatement (Second) of Contracts. Thus, even if this court were to accept the relators' argument that seeking reimbursement for a contract that is null under Louisiana law constitutes a false claim under the FCA, the Contractors' claims for reimbursement here were not "false," because the subcontracts were not null. We note in addition that because the relators' basis for FCA liability fails, we need not address the question of the measure of damages in the event of a False Claims Act violation.

IV.

In sum, for the reasons herein given, the judgment of the district court is AFFIRMED.

---

[6] The Contractors also contend that even if the subcontracts were deemed null under Louisiana law, the Contractors would nonetheless have been entitled to reimbursement from FEMA on the "cost-plus-fixed-fee" basis, a factor that would preclude actionable falsity under the FCA. Further, they contend that because FEMA instructed the Contractors to continue the THU installations notwithstanding the subcontractors' lack of LP gas permits, and because FEMA and the Contractors were unsure as to whether the LP gas regulations applied to their work, the Contractors' claims against the government agency would fail to meet the materiality and scienter elements of a False Claims Act violation. Because we hold that the Contractors made no false claim as alleged and argued by the relators, we need not address these issues.

11